**SHOALS AMERICAN INDUSTRIES, INC., Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant,**

**J.D. Bertolini Industries, Ltd., Intervenor–Defendant–Appellant.**

No. 88–7670.

United States Court of Appeals, Eleventh Circuit.

July 17, 1989.

Judith Bartnoff, Patton, Boggs & Blow Washington, D.C., for J.D. Bertolini.

Freddi Lipstein, Mary K. Doyle, and Anthony J. Steinmeyer, Appellate Staff Civ. Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

William W. Goodrich, Jr., Kathryn T. Harris, and Arent, Fox, Kintner, Plotkin & Kahn, Vienna, Va., for plaintiff-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Shoals American Industries, Inc. (Shoals) originally brought this action as an unsuccessful bidder seeking injunctive and declaratory relief against defendant-appellant, the United States and defendant-intervenor-appellant J.D. Bertolini, Inc. (Bertolini). The district court granted the requested relief and enjoined the United States Navy from awarding a manufacturing contract to Bertolini. We reverse.

## I. BACKGROUND

On December 2, 1987, the Navy issued Invitation for Bids (IFB) No. N 62578–87–B–7046 for the manufacture of various shipping and storage containers. The IFB was made pursuant to the sealed bidding procedures set forth in 10 U.S.C. § 2305, which provides, in pertinent part:

(b)(1) The head of an agency shall evaluate sealed bids and competitive proposals based solely on the factors specified in the solicitation.

(2) All sealed bids or competitive proposals received in response to a solicitation may be rejected if the head of the agency determines that such action is in the public interest.

(3) Sealed bids shall be opened publicly at the time and place stated in the solicitation. The head of the agency shall evaluate the bids without discussions with the bidders and, except as provided in paragraph (2), shall award a contract with reasonable promptness to the responsible bidder whose bid conforms to the solicitation and is most advantageous to the United States, considering only price and the other price-related factors included in the solicitation. The award of a contract shall be made by transmitting written notice of the award to the successful bidder.

10 U.S.C.A. § 2305(b) (West Supp.1989).

After publishing the IFB but prior to the opening of the bids, the Navy amended the solicitation in several respects. This dispute concerns Amendment No. 3, which increased the number of TRICON containers specified in Contract Line Number 0003 ("CLIN 3") by 21—from 314 to 335. Amendment No. 3, with a revised bidding schedule reflecting the increased quantity attached, was sent to prospective bidders on February 10, 1988.

On March 18, 1988, the Navy opened the nineteen bids it received in response to the IFB. Eight were rejected immediately as not conforming to the IFB, because they did not include prices for all requested line items. Of the remaining eleven bids, Shoals' was the apparent lowest at $8,962,-891, but it, too, contained an irregularity.

Although Shoals' bid acknowledged receipt of Amendment No. 3, the bid was submitted on the original bid form—not on the revised form that accompanied Amendment 3 and reflected the requirement of 335 containers specified in CLIN 3. Thus, on its face, Shoals' bid appeared to offer to provide only 314 CLIN 3 units at a price of $3,214.17 each.

Suspecting from Shoals' acknowledgment of Amendment No. 3 that Shoals intended to bid on the total quantity of 335 containers, the Navy's Contracting Officer requested Shoals to verify that intent. On March 24, 1988, Shoals responded by letter, stating to the Contracting Officer that

Shoals understood and subscribed to the requirements of all of the amendments to the IFB, including the quantity change of Amendment No. 3. The letter stated further that the unit price for the 314 TRICON containers indicated in its bid would be the same for the total quantity of 335 required by the amended solicitation. Upon receipt of the letter, the Contracting Officer decided to award the contract to Shoals.

Bertolini, whose bid of $9,443,486—approximately $480,000 more than Shoals'—was the apparent second lowest, protested the proposed award, arguing to the Contracting Officer that Shoals' bid did not conform to the IFB. Bertolini contended that the bid neither made an offer to provide nor stated a price for the additional 21 TRICON containers required by Amendment No. 3. The Contracting Officer denied Bertolini's protest, concluding that Shoals' bid conformed to the IFB, because it acknowledged receipt of Amendment 3 and because Shoals' failure to include a price for the increased quantity was a "minor informality" that should be waived.

Unsatisfied, Bertolini renewed its arguments in a protest to the General Accounting Office (GAO). After soliciting a response from the Navy, the GAO agreed with Bertolini that Shoals' bid did not conform to the IFB. The GAO concluded that Shoals' acknowledgment of Amendment No. 3 did not bring the bid into conformity

with the IFB, as it was impossible to determine from the bid itself whether Shoals was offering the additional 21 units and, if so, at what unit price. *J.D. Bertolini Indus., Inc.,* B–231598, Sept. 14, 1988, 88–2 CPD ¶ 245. Thus, the GAO recommended that the Navy reject Shoals' bid.

In late September 1988, the Navy accepted the GAO's recommendation, rejected Shoals' bid as unresponsive, and awarded the contract to Bertolini. On September 29, 1988, Shoals filed this action against the United States. Bertolini subsequently intervened as a defendant.

The amended complaint asserts that Shoals' bid conformed to the IFB and that, consequently, the Navy's decision to award the contract to Bertolini is contrary to the mandate of 10 U.S.C. § 2305(b), *supra.* The complaint prayed for an injunction to prevent the United States from performing or making any payments to Bertolini under the contract, a declaration that Shoals was entitled to the contract as the responsive low bidder, attorneys' fees and such other relief the court deemed appropriate.[1] In support of its prayer for relief, Shoals argued to the district court that its bid conformed to the IFB notwithstanding its use of the superseded bid form, because (1) use of the superseded form was a waivable "minor informality" or "minor irregularity" within the meaning of 48 C.F.R. 14.-405,[2] and (2) use of the old form was waiva-

---

1. Shoals also filed a motion for a temporary restraining order, which the district court denied on September 30, 1988.

2. 48 C.F.R. 14.405 provides:

    A minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders. The defect or variation is immaterial when the effect on price, quantity, quality, or delivery is negligible when contrasted with the total cost or scope of the supplies or services being acquired. The contracting officer either shall give the bidder an opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid or waive the deficiency, whichever is to the advantage of the Government. Examples of minor informali-

ties or irregularities include *failure of a bidder to—*

(a) Return the number of copies of signed bids required by the invitation;

(b) Furnish required information concerning the number of its employees;

(c) Sign its bid, but only if—

(1) The unsigned bid is accompanied by other material indicating the bidder's intention to be bound by the unsigned bid (such as the submission of a bid guarantee or a letter signed by the bidder, with the bid, referring to and clearly identifying the bid itself); or

(2) The firm submitting a bid has formally adopted or authorized, before the date set for opening of bids, the execution of documents by typewritten, printed, or stamped signature and submits evidence of such authorization and the bid carries such a signature;

(d) Acknowledge receipt of an amendment to an invitation for bids, but only if—

ble as an "apparent clerical error" within the meaning of 48 C.F.R. 14.406–2.[3]

The district court agreed with Shoals and entered an order declaring "that Shoals American Industries, Inc., is entitled to the contract award as the low responsive bidder, subject to the customary and usual evaluations of responsibility and the other post-award checks normally required" and enjoining the United States and Bertolini from proceeding with performance of the contract.[4] *Shoals American Indus., Inc. v. United States*, No. 88–AR–5434–NW (N.D.Ala. Oct. 11, 1988). This appeal followed.

## II. DISCUSSION

### A. *The GAO's Decision*

The Comptroller General's practice of entertaining bid protests originally was an outgrowth of his authority to "settle" accounts. *See* 31 U.S.C. § 3526. The rationale behind this practice was that the Comptroller General was offering an opinion on what he considered to be "required of a procurement official in order to clear a public account." *Wheelabrator Corp. v. Chafee*, 455 F.2d 1306, 1313–14 (D.C.Cir. 1971).

This practice was modified by the Competition in Contracting Act of 1984 (CICA), Pub.L. No. 98–369, 98 Stat. 1175, which amended, *inter alia*, the Armed Services Procurement Act of 1947, 10 U.S.C. §§ 2301 *et seq.* (governing procurement by the Department of Defense, the Coast Guard, and the National Aeronautics and Space Administration). The final subtitle of CICA establishes a "Procurement Protest System," which authorizes the Comptroller General to entertain objections to agency procurement decisions and requires the agency to stay the award or performance of the contract pending his decision. 31 U.S.C. §§ 3551–3556.

Under CICA, "[i]f the Comptroller General determines that the solicitation, proposed award, or award does not comply with a statute or regulation," he must recommend that the agency take corrective action by awarding the contract to the protester, issuing a new solicitation, terminating the contract, or "implement[ing] such other recommendations as the Comptroller General determines to be necessary in order to promote compliance with procurement statutes and regulations." 31 U.S.C.A. § 3554(b)(1) (West Supp.1989). The agency must report to the Comptroller General if it has not fully implemented those recommendations within 60 days. 31 U.S.C. § 3554(e)(1). Although the Comptroller General may not insist that the agency comply with his recommendations, he may award a prevailing protester its bid-preparation costs, as well as attorneys'

---

> (1) The bid received clearly indicates that the bidder received the amendment, such as where the amendment added another item to the invitation and the bidder submitted a bid on the item; or
> (2) The amendment involves only a matter of form or has either no effect or merely a negligible effect on price, quantity, quality, or delivery of the item bid upon;
> (e) Furnish affidavits concerning parent company and affiliates, if required pursuant to the clause at 52.214–8, Parent Company and Identifying Data, and 52.214–17, Affiliated Bidders; and
> (f) Execute the certifications with respect to Equal Opportunity and Affirmative Action Programs, as set forth in the clauses at 52.-222–22, Previous Contracts and Compliance Reports, and 52.222–25, Affirmative Action Compliance.
> 48 C.F.R. 14.405 (1987).

**3.** 48 C.F.R. 14.406–2 provides:
> (a) Any clerical mistake, apparent on its face in the bid, may be corrected by the contract-

ing officer before award. The contracting officer first shall obtain from the bidder a verification of the bid intended. Examples of apparent mistakes are—
> (1) Obvious misplacement of a decimal point;
> (2) Obviously incorrect discounts (for example, 1 percent 10 days, 2 percent 20 days, 5 percent 30 days);
> (3) Obvious reversal of the price f.o.b. destination and price f.o.b. origin; and
> (4) Obvious mistake in designation of unit.
> (b) Correction of the bid shall be effected by attaching the verification to the original bid and a copy of the verification to the duplicate bid. Correction shall not be made on the face of the bid; however, it shall be reflected in the award document.
> 48 C.F.R. 14.406–2 (1987).

**4.** A bid that conforms to a solicitation is said to be "responsive."

fees and costs incurred in pursuing the protest. 31 U.S.C. § 3554(c)(1). Such an award must be paid by the agency "out of funds available ... for the procurement of property and services." 31 U.S.C.A. § 3554(c)(2) (West Supp.1989).

In this case, the GAO determined that Shoals' bid was unresponsive because it failed to make an unequivocal offer to provide the *exact* items called for in the IFB. Shoals' acknowledgment of the amendment increasing the quantity of CLIN 3, GAO asserted, was insufficient to constitute a bid for the additional quantity, because it was not possible to determine, from the bid itself, whether Shoals was offering the additional 21 containers and, if so, what the unit price for the additional containers was intended to be. Further, noting that pricing omissions *may* be waived if "the items added by an amendment are divisible from the solicitation's overall requirements, are *de minimis* as to total cost, and clearly would not affect the competitive standing of the bidders," GAO determined that a waiver of the defect was not warranted in this case. GAO concluded that "[t]he defect in Shoals' bid ... involves a price omission for an additional quantity of an item which is an integral part of the overall contract requirements" and that, consequently, "Shoals' failure to comply with the solicitation's amended quantity terms represents a material deviation from an essential requirement."

### B. *The District Court's Decision*

The district court noted that its review of the Navy's decision to award the contract to Bertolini was governed by the Administrative Procedure Act (APA), which provides, in pertinent part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

. . . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

5 U.S.C.A. § 706 (West 1977). Citing this court's decision in *Choctaw Mfg. Co., Inc. v. United States*, 761 F.2d 609, 616 (11th Cir.1985), the court stated that, in order to prevail under section 706, "a disappointed bidder must show either (1) that the decision of the procurement official had no rational basis, or (2) that the decision involved a clear and prejudicial violation of applicable statutes or regulations."

Shoals' claim—that the decision to award the contract to Bertolini involved "a clear and prejudicial violation" of 10 U.S.C. § 2305—goes to the second prong of the *Choctaw* analysis. Accordingly, the district court "recognize[d] that Shoals ... bears a heavy burden, inasmuch as considerable deference should be given to agency interpretations of their governing regulatory schemes." Mem. op. at 4 (citing *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). Despite this recognition, however, the district court stated:

While such deference [to agency interpretations] may be desirable where there is a highly complex and technical regulatory scheme governing the agency's actions, especially where the agency itself has taken conflicting positions, where the reviewing court is competent to review such a scheme, it need not always defer to the agency action. *Choctaw Manufacturing*, 761 F.2d at 619; *Superior Oil Company v. Udall*, 409 F.2d 1115, 1119 (D.C.Cir.1969). The regulatory scheme in the instant case being neither overly technical nor incomprehensibly complex, this court sets out to review the decision of the Navy in awarding the contract.

Mem. op. at 4–5.[5] Thus, it appears that the district court decided that no deference was

---

5. Although the Navy's rationale for abandoning its prior position with respect to the conformity of Shoals' bid and awarding the contract to

Bertolini is not in the record, the district court—with the apparent agreement of the parties—evaluated the Navy's decision by reference

due the GAO's decision in this case, and, indeed, the court's opinion demonstrates that none was given.

Citing *Isometrics, Inc. v. United States*, 11 Cl.Ct. 346 (1986), the court found that, contrary to GAO's determination, Shoals' acknowledgment of Amendment No. 3 constituted a binding agreement to meet its requirements. The court also found that, in initially awarding the contract to Shoals, the Contracting Officer had correctly followed the procedures set forth in 48 C.F.R. 14.405 for resolving "minor irregularities" and "minor informalities." In the court's view, Shoals' failure to include a price term was an obvious technical or clerical error that easily could be clarified. Relying on *United Food Services, Inc.*, 65 Comp.Gen. 167, 170 (1985), the district court found that a clear pricing pattern could be established from the face of Shoals' bid. The court concluded, therefore, that Shoals' bid conformed to the IFB.

## C. *The Applicable Standard of Review*

Bertolini and the United States ask this court to reverse the district court's holding that Shoals' was the lowest bid conforming to the IFB and to lift the injunction barring the government and Bertolini from performing the contract. Although they agree—as does Shoals—that the district court was correct to conclude that this case is governed by the second prong of the *Choctaw* analysis, appellants assert that the district court misapplied the *Choctaw* standard. Specifically, they contend that the district court erred by failing to accord under *Choctaw* the proper deference to the Navy's (and GAO's) interpretation of 10 U.S.C. § 2305 and its implementing regulations. Accordingly, appellants do not ask us to interpret and apply section 2305 and its implementing regulations—rather, they ask us simply to reverse the district court's failure to defer to the interpretation of those standards which led the Navy to con-

clude that Shoals' bid did not conform to the IFB.

Although neither the GAO nor the Navy carries *carte blanche* with regard to section 2305, we agree with much of what appellants assert. The Supreme Court has held repeatedly that courts should respect an executive-branch agency's reasonable interpretation of statutes and regulations the agency is charged with administering. Thus, in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court stated:

> considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations
>
> "has been consistently followed ... whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more that ordinary knowledge respecting the matters subjected to agency regulations...."

467 U.S. at 844–45, 104 S.Ct. at 2782–83 (quoting *United States v. Shimer*, 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)) (remaining citations omitted). Such deference is particularly appropriate in the procurement area, as there is a "strong public interest in avoiding disruptions in procurement, and for withholding judicial interjection unless it *clearly* appears that the case calls for an assertion of an overriding public interest...." *Hayes Int'l Corp. v. McLucas*, 509 F.2d 247, 258 (5th Cir.) (emphasis added) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1300 (D.C.Cir.1971)), *cert. denied*, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975).[6] Indeed, it is our recognition that "judges are ill-equipped to settle the delicate questions involved in procurement decisions, where long and complex factual histories,

to the rationale of the GAO's recommendation. We do the same.

**6.** The Eleventh Circuit, in the en banc decision in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

subtle economic factors and the need for expeditious buying decisions require assessments 'better left to the expertise of an executive agency,' " *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1271 (5th Cir. 1978) (quoting *Hayes*, 509 F.2d at 258), that underlies our rule that, in order to prevail under the second prong of the *Choctaw* analysis, an unsuccessful bidder must show that the procurement decision "involved a *clear* and prejudicial violation of applicable statutes or regulations." 761 F.2d at 616 (quoting *Kinnett Dairies*, 580 F.2d at 1271) (emphasis added).

In this case, the district court failed to accord sufficient weight to GAO's interpretation of section 2305's requirement that a bid "conform[ ] to the solicitation." Although the district court's ultimate conclusion that Shoals' bid conformed to the IFB is reasonable, the GAO's conclusion, which rests upon a slightly different policy emphasis, also is eminently reasonable.

The district court's opinion betrays a strong concern that what the court construes as a relatively insignificant clerical error will cost Shoals the contract and the United States $480,000. The GAO's decision, on the other hand, focuses on the government's need to know from the face of the bid whether the offeror will be bound to provide all that the government seeks. The GAO opinion emphasizes that achieving certainty in the bidding process is well worth the $480,000 it will cost in this case.

The question whether the irregularity in Shoals' bid is "minor" or "material," then, is largely one of policy. As such, it is one upon which the district court should have deferred to the Navy and GAO. Put another way, Shoals failed to show that the Navy's decision to award the contract to Bertolini involved a *"clear ... violation of* applicable statutes or regulations."

Our agreement with appellants' suggestion that considerable deference is due the GAO's decisions in the procurement field does not mean, however, that no meaningful judicial scrutiny of executive-branch procurement decisions is available. According uncritical deference to such deci-

sions would, in effect, repeal Congress' grant of jurisdiction via the APA. That we cannot and would not do. We hold only that the district court erred in this case by failing to give sufficient deference to the Navy's reasonable interpretation of section 2305 and its implementing regulations.

Accordingly, the judgment of the district court is REVERSED.