**MARK DUNNING INDUSTRIES, INC., Plaintiff,**

v.

**Richard B. CHENEY, Secretary of Defense, et al., Defendants.**

Civ. A. No. 89–T–1116–S.

United States District Court, M.D. Alabama, S.D.

Nov. 7, 1989.

William D. Coleman, James H. McLe-more, Montgomery, Ala., for plaintiff.

James Wilson, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, plaintiff Mark Dunning Industries, Inc., challenges the termination of its refuse collection and waste disposal contract awarded by the United States Army, and the award of that contract to another bidder. The company has sued the following federal officials: the Secretary of Defense, the Secretary of the Army, and the Army Contracting Officer for Fort Polk, Louisiana. Based on the evidence and briefs submitted by the parties, the court finds that it is without jurisdiction to consider Mark Dunning's challenge to the termination of its contract but that it does have jurisdiction over the company's challenge to the award of the contract to another bidder. The court further finds that the award of the contract to another bidder was improper, and that appropriate relief is therefore in order.[1]

### I.

In October 1988, the contracting officer for the United States Army invited bids on a contract for refuse collection and disposal on a federal installation at Fort Polk. Interested small businesses were allowed to submit bids on either or both of two ar-rangements for disposal of the waste: "Schedule I" required that the disposal of the waste be on a government-owned, on-site landfill; and "Schedule II" required that the disposal be off the post on lands provided by the bidder. Schedule I further required that each bidder include in its bid price the cost of "covering" and "turfing" portions of the Fort Polk landfill that had been left unturfed by a previous contractor; these costs were not included in Schedule II. Reliable Trash Service Company of Maryland, Inc., was the lowest bidder on Schedule I, and Mark Dunning was the lowest bidder on Schedule II. The Army found Mark Dunning's bid to be the lowest overall and announced that it intended to award the contract to that company.

Reliable Trash protested to the Army contracting officer that the Army had improperly evaluated the bids by including the costs of corrective work on the landfill in Schedule I but not in Schedule II. The contracting officer denied the protest as untimely and awarded the contract to Mark Dunning.

Reliable Trash then filed a protest with the General Accounting Office (GAO). The GAO sustained the protest and recommended to the Army that it "terminate for convenience" Mark Dunning's contract and award the contract to Reliable Trash. The GAO found that the untimeliness of the protest to the contracting officer did not bar consideration of the merits by the GAO because the issues were significant enough to warrant an exception under federal regulations. The GAO also stated that the corrective work on the landfill was "unrelated" to the other waste disposal work and that, as a result, bidders offering on-post disposal were placed at "an unjustified competitive disadvantage." Furthermore, in denying Mark Dunning's request for reconsideration, the GAO found that the company had "not established that it was prejudiced by the defective evaluation scheme," because it had not indicated how it would have bid differently if the costs for correc-

---

1. The parties informed the court at an in-chambers conference on October 30, 1989, that the record is complete, and that, therefore, the court could enter a final judgment without a hearing or trial.

tive work had not been a part of Schedule I. The Army followed the GAO's recommendation; it terminated Mark Dunning's contract and awarded it to Reliable Trash.

## II.

■ Mark Dunning seeks to invoke the court's jurisdiction under 28 U.S.C.A. § 1331, claiming that its dispute with the Army "arises under" the Armed Services Procurement Act, 10 U.S.C.A. § 2305,[2] and various federal regulations. Defendants contend that such jurisdiction is precluded by the Contract Disputes Act of 1978, 41 U.S.C.A. §§ 601–613, and the Tucker Act, 28 U.S.C.A. §§ 1346, 1491. These two acts specifically abolished the jurisdiction of the federal district courts to hear claims "founded upon any express or implied contract with the United States," 28 U.S.C.A. § 1346(a)(2), and, instead, provided for review of government contract disputes by the Claims Court, 41 U.S.C.A. § 609(a)(1), or the applicable agency board of contract appeals. § 606.[3] Congressional intent to deprive the district courts of jurisdiction in contract cases is clear in the legislative history of the Act. "[The Contract Disputes Act] is amended by allowing contractors with suits against the Government (excluding the Tennessee Valley Authority) to bring direct action only in the Court of Claims. U.S. district court jurisdiction is eliminated from Government contract claims." S.Rep. No. 1118, 95th Cong.2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5244. The essential question presented is whether Mark Dunning is asserting a claim as an unsuccessful bidder under the Armed Services Procurement Act, or whether its claim is a contractual dispute governed by the terms and jurisdic-

tional provisions of the Contract Disputes Act and the Tucker Act.

In *Alabama Rural Fire Insurance Co. v. Naylor*, 530 F.2d 1221 (5th Cir.1976), the plaintiff had emerged as low bidder for a contract to provide backup insurance to the Farmers Home Administration (FmHA).[4] After awarding the contract to Alabama Rural, but before a formal contract was signed, the FmHA concluded that the contract should be rescinded because the terms of the federal statute under which Alabama Rural was incorporated did not authorize it to enter into the contract. The former Fifth Circuit held that Alabama Rural's action for declaratory and injunctive relief to restrain the FmHA from rescinding the contract or soliciting new bids was clearly designed "to compel the appellants in their official capacities to specifically perform a contract." *Id.* at 1226. As a result, the court held that, under the Tucker Act, Alabama Rural was limited to an action for damages in the Court of Claims.

Similarly, in *Ingersoll–Rand Co. v. United States*, 780 F.2d 74 (D.C.Cir.1985), the Air Force terminated a contract less than one month after awarding it to Ingersoll–Rand and began to resolicit bids. The Court of Appeals for the District of Columbia upheld the district court's conclusion that it lacked subject matter jurisdiction over Ingersoll–Rand's claims. The court stated:

> [Ingersoll–Rand] is not a disappointed bidder who seeks to void the award of a contract to another; instead, it complains of wrongful termination of its own contract with the government.

*Id.* at 79.

The *Ingersoll–Rand* court found that the "essence of [Ingersoll–Rand's] claim is a request for specific performance of the

---

**2.** Mark Dunning asserts that this action arises under § 2305(b)(1), which provides that "The head of an agency shall evaluate sealed bids and competitive proposals based solely on the factors specified in the solicitation."

The Eleventh Circuit Court of Appeals has held that § 1331 confers subject matter jurisdiction on district courts in disputes arising under the Armed Services Procurement Act. *Choctaw Manufacturing Co., Inc. v. United States*, 761 F.2d 609, 615 (11th Cir.1985).

**3.** The Contract Disputes Act does provide in one instance for district court review of government contract disputes: in actions against the Tennessee Valley Authority. § 609(a)(2).

**4.** The Eleventh Circuit, in the en banc decision in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

original contract." *Id.* As a contract claim, the court explained, the action was governed by the Contract Disputes Act, with exclusive jurisdiction in the Claims Court. The fact that Ingersoll–Rand would not be able to obtain specific performance as a remedy in Claims Court did not demonstrate that the plaintiff had no adequate remedy in that court. The Court of Appeals stated: "To hold that the [Contract Disputes Act] does not apply merely because, under that scheme, plaintiff cannot receive all its requested remedies, would intolerably upset the congressional purpose underlying the Act." *Id.* at 80.[5]

In contrast to *Alabama Rural* and *Ingersoll–Rand,* the Eleventh Circuit recently held, in *Choctaw Manufacturing Co., Inc. v. United States,* 761 F.2d 609 (11th Cir.1985), that the district court had subject matter jurisdiction to hear the plaintiff's request for declaratory and injunctive relief requiring the Department of Defense to award it two disputed contracts. *Id.* at 615. The contracts involved in that case were small business set-asides, and the contracting officer had not awarded the contracts because of a dispute as to whether the apparent low bidder was a "small" business. The *Choctaw* court did not discuss the relevance of the Contract Disputes Act to the dispute before it, but did note that the case did not implicate the Tucker Act. The court drew a distinction between a plaintiff seeking termination of another party's contract and a plaintiff seeking specific performance of its own cancelled contract. The court stated that "A disappointed low bidder ... seeking the termination of a government contract with one party and the award of that contract to it, is not deemed to be making a claim for specific performance" of its own cancelled contract, and thus does not implicate the Tucker Act. *Id.* at 621 n. 19. The court was distinguishing the circumstances presented to it from those presented in

*Sea–Land Service, Inc. v. Brown,* 600 F.2d 429 (3d Cir.1979), in which the plaintiff sought specific performance of its own cancelled contract and thus was unable to obtain in district court an injunction prohibiting the performance of the contract with the new contractor.

The defendants argue that Mark Dunning's claims fall within the pale of *Alabama Rural* and *Ingersoll–Rand;* Mark Dunning argues that *Choctaw* applies. The court believes that, as is commonly the case, the truth lies in the middle. Mark Dunning's claims are similar to those in *Alabama Rural* and *Ingersoll–Rand* to the extent Mark Dunning seeks to have the termination of its contract vacated; this claim is merely one for specific performance of a contract. However, Mark Dunning's claims differ in one significant respect from those in *Alabama Rural* and *Ingersoll–Rand;* Mark Dunning is seeking to vindicate the bidding process, as well as its contract. In other words, unlike the plaintiffs in *Alabama Rural* and *Ingersoll–Rand,* who sought to have resolicitation of bids prohibited as a part of their efforts to regain their contracts, Mark Dunning asks, in the alternative, that the Army resolicit bids. Mark Dunning's alternative claim rests solely on federal bidding statutes and regulations and, therefore, is completely independent of its former contract. To this extent, the claim is more akin to *Choctaw.*

The court will dismiss without prejudice, as outside the court's jurisdiction, Mark Dunning's challenge to the termination of its own contract. However, the court will proceed with the company's separate and independent challenge to the award of the contract to Reliable Trash.

### III.

The issue, therefore, is whether the Army was justified in awarding the con-

---

**5.** *See also Management Science America, Inc. v. Pierce,* 598 F.Supp. 223 (N.D.Ga.1984) (jurisdiction in dispute over termination of government contract was properly in Claims Court, despite plaintiff's characterization of claim as violation of federal procurement regulations), *aff'd* 778 F.2d 792 (11th Cir.1985); *Group Health, Inc. v.*

*Schweiker,* 549 F.Supp. 135 (S.D.Fla.1982) (declining to exercise jurisdiction over claim arising from non-renewal of Medicare provider's contract because claim was properly before Claims Court despite plaintiffs' characterization of action as demand for a hearing).

tract to Reliable Trash. Because the Army followed the recommendation of the GAO in awarding the contract to Reliable Trash, without providing any additional explanation, the court will evaluate the Army's decisions by reference to the rationale of the GAO's recommendation.[6]

The court's review of the GAO's decision is governed by the Administrative Procedure Act, 5 U.S.C.A. §§ 702–706. In order to challenge successfully the Army's decision to award the contract to Reliable Trash, Mark Dunning bears the heavy burden of proving either (1) that the decision lacked any rational basis, or (2) that the revised evaluation and award involved clear and prejudicial violations of federal statutes and regulations. § 706(2)(A). *See Choctaw Manufacturing,* 761 F.2d at 616; *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1271 (5th Cir.1978). *Accord Glasgow, Inc. v. Federal Highway Administration,* 843 F.2d 130, 137 n. 4 (3d Cir.1988).

Mark Dunning challenges the manner in which the GAO decided to award the contract to Reliable Trash under both theories.[7] The company argues first that the determination underlying the GAO's decision to award the contract to Reliable Trash—that the landfill restoration work was unrelated to the waste disposal—lacks any rational basis. The company argues second that, even if the GAO's underlying determination was rational, the remedy selected by the GAO—that the contract should be awarded to Reliable Trash rather than resolicited—violated the Armed Services Procurement Act, 10 U.S.C.A. § 2305(b).

A.

■ In determining whether the GAO's decisions are rational, or otherwise violate federal law, the court is guided by several well-established precepts. First, and most obviously, "judges are ill-equipped to settle the delicate questions involved in procurement decisions, where long and complex factual histories, subtle economic factors and the need for expeditious buying decisions require assessments 'better left to the expertise of an executive agency.'" *Shoals American Industries, Inc. v. United States,* 877 F.2d 883, 888–89 (11th Cir. 1989) (*quoting Hayes International Corporation v. McLucas,* 509 F.2d 247, 258 (5th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975)). Moreover, there is a "strong public interest in avoiding disruptions in procurement, and for withholding judicial interjection unless it *clearly* appears that the case calls for an asserting of an overriding public interest." *Shoals American Industries, Inc.,* 877 F.2d at 888 (emphasis added) (*quoting M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1300 (D.C.Cir.1971)). Accordingly, whether it is reviewing the rationality of an agency procurement decision or determining that decision's compliance with federal law, a court should approach its task with deference and should interject itself only where the violation appears clear. *Shoals American Industries, Inc., supra.*

■ Mindful of these precepts, the court must conclude that Mark Dunning has failed to establish that the GAO's finding that the corrective work was unrelated to the waste disposal is irrational. The court does agree with Mark Dunning that the Army's initial decision to require new con-

---

**6.** *See Shoals American Industries, Inc. v. United States,* 877 F.2d 883, 887 n. 5 (11th Cir.1989); *Honeywell, Inc. v. United States,* 870 F.2d 644 647 (Fed.Cir.1989).

**7.** Mark Dunning also argues that Reliable Trash should not have received the award because its protest was not filed in a timely manner. This argument is without merit. Even if the protest was untimely, the GAO has the discretion to consider a late protest if it finds that it "raises issues significant to the procurement system." 4 C.F.R. § 21.2(b). The GAO made such a finding with regard to Reliable Trash's protest.

Finally, Mark Dunning makes a strained argument that the Army's decision violated regulations governing the use of government property. 48 CFR part 45. The company has not demonstrated to the court how these regulations apply to the disputed contract. Moreover, if the regulations were relevant to the procurement at issue here, this court would defer to the Army's interpretation of those regulations. *See Shoals American Industries, Inc.,* 877 F.2d 883 (11th Cir.1989).

tractors using the on-post landfill to returf land left unturfed by prior contractors appears to have been both financially and environmentally sound, and, indeed, if the court were the final decisionmaker it would have stuck to the decision. However, determining the costs to be included in a procurement contract and the means by which the Army should return land to an environmentally acceptable state are policy questions, best left to the Army. Whether land left unturfed by prior contractors should even be part of a procurement schedule is not a legal question this court can resolve. *See Shoals American Industries, Inc.*, 877 F.2d at 889. The fact that Mark Dunning and the court would have done things differently does not entitle the court to set aside the decision of the GAO and the Army.

## B.

■ The GAO's decision to award the contract to Reliable Trash rather than resolicit bids is much more troubling. The Armed Services Procurement Act provides that "[t]he head of an agency shall evaluate sealed bids and competitive proposals based solely on the factors specified in the solicitation," 10 U.S.C.A. § 2305(b)(1), and "shall award a contract ... to the responsible bidder whose bid conforms to the solicitation and is most advantageous to the United States." § 2305(b)(3). If the agency head determines that it is in the public interest, "[a]ll sealed bids ... may be rejected." § 2305(b)(2). The Armed Services Procurement Act expressly and specifically requires that bids be evaluated solely on the factors in the solicitation.

The GAO did not comply with this requirement when it re-evaluated the bids based on its determination that costs for returfing land left uncovered by prior contractors should not be a part of Schedule I; it re-evaluated the bids based on a formula different from that in the solicitation. Con-

fronted with such a *clear* violation of federal law, the court must set aside the award of the contract. Federal courts should not, as the Eleventh Circuit has explained, "stand aside and rubber stamp ... administrative decisions ... inconsistent with a statutory mandate." *Choctaw Manufacturing Company, Inc. v. United States*, 761 F.2d 609, 619 n. 17 (11th Cir.1985) (*quoting American Shipbuilding Co. v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965)). Moreover, as the appellate court went on to explain, "the public and ... bidders have a strong interest in certainty in the bidding process.... To achieve this certainty, strict adherence to the procedures for bidding is a necessity." *Choctaw Manufacturing Company, Inc.*, 761 F.2d at 619 n. 17.

Of course, the Competition in Contracting Act, 31 U.S.C.A. §§ 3551–3556, gives the GAO broad discretion in the type of remedy it may recommend upon finding that a contract award was improper. It may, for example, recommend that the agency issue a new solicitation, terminate the contract, or award a contract, 31 U.S.C.A. § 3554(b)(1), and, in reaching its decision, the GAO may consider an array of factors, including "the seriousness of the procurement deficiency, the degree of prejudice to other interested parties or to the integrity of the competitive procurement system, the good faith of the parties, the extent of performancy, [sic] cost to the government, the urgency of the procurement and the impact of the recommendation on the contracting agency's mission." 4 CFR § 21.7(b). The Act, however, explicitly requires that, if the GAO chooses to award a contract, the award must be "consistent with the requirements" of the relevant statute. 31 U.S.C.A. § 3554(b)(1)(E). In awarding the contract to Reliable Trash, the GAO failed to comply with the Armed Services Procurement Act.[8]

---

8. Indeed, this court's holding is fully consistent with the GAO's own prior opinions. In *North-East Imaging, Inc.*, B–216734, August 28, 1985, 85–2 CPD, upholding an agency's decision to resolicit bids rather than revise its evaluation method and award the contract, the GAO stated that "all evaluation factors must be made known in advance of bid opening so that all bidders can compete on an equal basis."

The Army finally argues that, granted all of the above, Mark Dunning has made an inadequate showing of prejudice, because the company failed to demonstrate to the GAO that it would have bid differently if bids had been solicited as recommended by the GAO. Mark Dunning responds that it was unaware that it had to establish prejudice in such a specific way, and that, if called upon to do so, it could have met the requirement. Upon a review of the manner in which the topic of prejudice was presented and discussed before the GAO, the court believes Mark Dunning has the better of this argument.

The GAO's initial decision did not mention prejudice as a factor in its recommendation that the Army award the contract to Reliable Trash, although prejudice is a permissible consideration under 4 CFR § 21.6(b). Mark Dunning requested reconsideration of that decision in a letter that focused on countering the reasoning set forth by the GAO. At the end of that letter, Mark Dunning responded to an earlier assertion by Reliable Trash that Schedule II bidders like Mark Dunning "cannot contend reasonably" that the formula used by the GAO would be prejudicial. Mark Dunning stated that if it had been informed of the GAO's evaluation formula, it "may have chosen to submit a price" under Schedule I. There is nothing in the record to indicate that Mark Dunning should have been aware that the GAO would require an explanation of the "specific business and cost considerations [the company] would have factored into its decision" to bid on Schedule I. The court therefore cannot accept the Army's contention that Mark Dunning made an insufficient showing of the prejudice it would suffer if the contract were awarded under the GAO's evaluation formula.

This conclusion, that the Army acted in violation of the Armed Services Procurement Act, therefore, requires that the award of the contract to Reliable Trash be vacated. This conclusion does not, however, necessarily mandate that the Army award the contract only on a new solicitation of bids. Whether Mark Dunning has indeed been prejudiced—that is, whether Mark Dunning would have bid differently if the bids had been solicited as recommended by the GAO—is a factual issue for the Army and not this court. The court will therefore remand this matter to the Army for resolution of this issue, after all interested parties, including Mark Dunning, have been given an opportunity to address the issue. If the Army finds that Mark Dunning would have bid differently, then the Army must resolicit bids for the contract. If, however, the Army finds that Mark Dunning would not have bid differently, then the Army may award the contract to Reliable Trash.

An appropriate judgment will be entered.

DONE.

## JUDGMENT

Accordingly, it is the ORDER, JUDGMENT, and DECREE, of the court:

(1) That it be and it is hereby DECLARED that the defendants improperly awarded the refuse collection and waste disposal contract to Reliable Trash Service of Maryland, Inc., in violation of the Armed Services Procurement Act, 10 U.S.C.A. § 2305;

(2) That this cause is remanded to the defendants to determine whether plaintiff Mark Dunning Industries, Inc. was prejudiced by said violation;

(3) That the defendants be and they are hereby ENJOINED and RESTRAINED:

(A) From failing to vacate the award of said contract to Reliable Trash Service of Maryland, Inc.; and

(B) From awarding said contract except as set forth in the memorandum opinion of the court; and

(4) That the plaintiff's claim that the defendants improperly terminated its contract is dismissed without prejudice.

It is further ORDERED that costs are taxed against the defendants, for which execution may issue.