940 F.2d 1457
 37 Cont.Cas.Fed. (CCH) 76,207
 STAY, INC., a Florida Corporation, Plaintiff-Appellant,
v.
Richard B. CHENEY, Secretary of Defense; Karen A. Lefman,
Contracting Officer, Defendants-Appellees,
American Mutual Protective Bureau, Intervenor-Defendant-Appellee.
 No. 90-3849.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 4, 1991.
As Amended Sept. 30, 1991.
 
 D. Lee Roberts, Jr., Karl Dix, Jr. Smith, Currie & Hancock, Atlanta, Ga., for plaintiff-appellant.
 Ralph J. Lee, Asst. U.S. Atty., Jacksonville, Fla., Maj. David P. Carey, Office of the Judge Advocate Gen., Dept. of the Army, Alexander J. Pires, Jr., Washington, D.C., James A. Bledsoe, Jr., Bledsoe, Schmidt, Lippes & Adams, Jacksonville, Fla., Janet N. Repka, Real Estate Facilities Directorate, Washington Headquarters, Dept. of Defense, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before JOHNSON and COX, Circuit Judges, and ENGEL*, Senior Circuit Judge.
 ENGEL, Senior Circuit Judge:
 
 
 1
 This case addresses the validity of a bid for a government contract where the bid contains a technical defect. This court has previously addressed similar issues in Shoals American Indus., Inc. v. United States, 877 F.2d 883 (11th Cir.1989) (deferring to government agency's determination that bid was unacceptable), and Choctaw Mfg. Co. v. United States, 761 F.2d 609 (11th Cir.1985) (reversing government agency's decision to accept a defective bid). Here, the successful bidder failed to comply with a rule requiring appointment of process agents by its bonding company before opening of the bids. We hold that because the bonding company appeared on the Treasury Department's list of approved sureties, the district court properly deferred to the government agency's decision to accept the bid, particularly where the technical defect was cured shortly after the bid was accepted.
 
 
 2
 The plaintiff-appellant, Stay, Inc., ("Stay"), is in the business of providing security guards for hire. Stay was an unsuccessful bidder for a contract with the Department of Defense ("DOD") to provide security services at the Army Material Command Building in Alexandria, Virginia. The DOD awarded the contract to American Mutual Protective Bureau ("AMPB") in November 1989.
 
 
 3
 Stay sought injunctive and declaratory relief, arguing that AMPB's bid was defective and that the contract should have been awarded to Stay. The district court granted summary judgment in favor of defendants DOD and AMPB, finding that the defects in AMPB's bid could be waived by DOD, and that these defects did not affect the validity or enforceability of the AMPB bid. We now affirm the summary judgment granted in favor of the defendants.
 
 I.
 
 4
 In May 1989, the DOD issued an invitation for bids on the security services contract at the Alexandria facility. All bidders were required to submit a bond or bid guarantee with their bids in the amount of 20% of the bid price for the initial twelve-month period of the contract. A bid guarantee is a firm commitment from a bidder indicating that if its bid is accepted, it will execute the contractual documents and provide the payment and performance bonds required in the contract. Under the applicable Treasury Department regulations, the surety companies executing these 20% bonds were to be licensed in certain locations, and were to have appointed agents for service of process where the bidding company's offices were located, where the obligation was to be performed, and in the District of Columbia. A copy of this requirement was included with the DOD's invitation for bids.
 
 
 5
 Seven firms submitted bids for the security services contract. Stay, a Florida corporation, submitted the third lowest bid, while AMPB, a California corporation, submitted the second lowest bid. The H & H Service Company submitted the lowest bid. In August 1989, Stay filed a protest with the DOD's Contracting Officer, Karen Lefman, arguing that the bids filed by H & H and by AMPB were nonresponsive because of various alleged defects. Lefman agreed with Stay's objections to the H & H bid, concluding that it contained mathematical inconsistencies and failed to provide the required financial information for its sureties. However, the DOD found the AMPB bid acceptable, and in accordance with 41 U.S.C. Sec. 253b(c), awarded the contract to AMPB as the lowest qualified bidder.
 
 
 6
 Stay protested to the General Accounting Office ("GAO"), contending that the corporate surety which had provided AMPB's 20% bid guarantee, the Merchants Bonding Company, an Iowa corporation, was not licensed to do business in Virginia, the state where the contract was to be performed. The GAO denied Stay's protest in December 1989, concluding that Treasury Department policy only required the bonding company to be licensed in the state where the bond was executed, not where the contract was to be performed. Since the Merchants Bonding Company was licensed in California where the bond was executed, the GAO agreed with the DOD's Contracting Officer that the AMPB bid was not defective.
 
 
 7
 In its request for reconsideration filed with the GAO in January 1990, Stay added the argument that AMPB's bid was also defective because Merchants Bonding Company had not appointed agents for service of process in Virginia, where the contract was to be performed, nor in California, where AMPB is located. Citing Treasury Circular 570, Stay argued that federal regulations required such appointment of agents for service of process before the bids were opened by the DOD. Merchants Bonding Company had appointed agents for service of process in the District of Columbia before the bids were opened in June 1989, but had not appointed agents in Virginia or California before that date. In February 1990, the GAO concluded that these procedural omissions did not render the AMPB bid defective.
 
 
 8
 Stay then sought injunctive and declaratory relief in the U.S. District Court for the Middle District of Florida. In July 1990, the district judge concluded that GAO's approval of the AMPB bid was not arbitrary or capricious, and that even if the failure to appoint agents for service of process was a "technical violation of the law", Stay was not prejudiced by this omission. (Order Granting Summary Judgment, 7/13/90, at 6). Stay's requested relief was denied, and summary judgment granted in favor of the defendants. Stay has appealed the decision on the appointment of agents for service of process, but does not challenge the DOD's or GAO's decision on the failure of AMPB's surety to obtain a Virginia license.
 
 II.
 
 9
 We note as a preliminary matter that the GSA's authority in this case arises under the Federal Property and Administrative Services Act of 1949, Ch. 288, 63 Stat. 377 (now codified as amended in various sections of the U.S. Code). This statute provides the GSA with the authority to administer federal government property and to contract with private companies. 40 U.S.C. Sec. 481. The Act further authorizes the Administrator of the GSA to delegate specific functions to other executive agencies, 40 U.S.C. Sec. 486, and to employ personnel for the protection of federal property, 40 U.S.C. Sec. 490. By specific delegation dated September 23, 1987, the responsibility for the provision of security guard services at the Army Material Building in Alexandria, Virginia was delegated to the DOD.[1]
 
 
 10
 An economically interested party may protest to the GAO the proposed awarding of a government contract. 31 U.S.C. Secs. 3551-3556; 4 C.F.R. Sec. 21.1(a). Any interested party is also entitled to seek reconsideration of the GAO's decision, as Stay did here. 4 C.F.R. Sec. 21.12. Stay's action for relief in the district court arises under federal law as prescribed in the jurisdictional statute codified at 28 U.S.C. Sec. 1331, and Stay's legal standing to appeal the GAO's decision lies in those portions of the Administrative Procedure Act codified at 5 U.S.C. Secs. 701-706. The latter statute states that:
 
 
 11
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.
 
 
 12
 5 U.S.C. Sec. 702. As a disappointed bidder on the contract, Stay clearly had standing to challenge the awarding of the contract to AMPB. See Choctaw Mfg. Co. v. United States, 761 F.2d 609, 616 (11th Cir.1985); Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 872 (D.C.Cir.1970).
 
 
 13
 The district court's legal conclusions are subject to de novo review. Brown v. Crawford, 906 F.2d 667, 669 (11th Cir.1990). In reviewing a district court's decision to grant summary judgment, this court must apply the same legal standards that bound the district court. Earley v. Champion Intern. Corp., 907 F.2d 1077, 1080 (11th Cir.1990).
 
 
 14
 Under the applicable regulation, a copy of which was included in the DOD's invitation for bids on the contract at issue here, the surety companies supplying the 20% bid guarantees were to have appointed agents for service of process as follows:
 
 
 15
 (1) In the district where the principal resides; (2) in the district where the obligation is to be undertaken and performed; and (3) also in the District of Columbia where the bond is returnable and filed.
 
 
 16
 31 C.F.R. Sec. 224.2. See also Note (d) of Treasury Circular 570, 55 Fed.Reg. 27,332 (7/2/90). This Treasury Department regulation is promulgated under authority of 31 U.S.C. Sec. 9306.
 
 
 17
 The parties to this case agree that AMPB's bid failed to fully comply with this rule because AMPB's surety did not appoint process agents in California or Virginia before the bids were opened or before AMPB's bid was accepted. AMPB has now apparently complied with the requirements of the regulation, but Stay argues that at the time of submission, the AMPB bid was nonresponsive and should have been rejected. It is undisputed that AMPB's surety company, the Merchants Bonding Company, has at all relevant times appeared on the Treasury Department's list of approved sureties, and has been approved for and agrees to be obligated for the full amount of the bond in the event AMPB fails to honor its bid.
 
 
 18
 This court has established that a disappointed bidder who wishes to challenge a government contracting officer's decision awarding a contract to another party:
 
 
 19
 bear[s] a heavy burden of showing either that (1) the procurement official's decisions on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.
 
 
 20
 Choctaw Mfg. Co. v. United States, 761 F.2d 609, 616 (11th Cir.1985) (quotations omitted).
 
 
 21
 Stay's challenge to the contracting officer's decision arises under the second prong of the Choctaw test. In discussing this standard, our court has recently held that a procurement officer and the GAO are entitled to considerable deference when they interpret the statutes and regulations which they administer. Shoals American Indus. Inc. v. United States, 877 F.2d 883, 888 (11th Cir.1989). "Such deference is particularly appropriate in the procurement area, as there is a 'strong public interest in avoiding disruptions in procurement, and for withholding judicial interjection unless it clearly appears that the case calls for an assertion of an overriding public interest....' " Shoals, 877 F.2d at 888 (emphasis in original) (quotations omitted).
 
 
 22
 In Shoals, the unsuccessful bidder alleged that the Navy and GAO improperly determined its bid to be incomplete and on an improper form. This court upheld the Navy's and GAO's rejection of the bid.
 
 
 23
 The question whether the irregularity in Shoals' bid is "minor" or "material," then, is largely one of policy. As such, it is one upon which the district court should have deferred to the Navy and GAO. Put another way, Shoals failed to show that the Navy's decision to award the contract to Bertolini involved a "clear ... violation of applicable statutes or regulations."
 
 
 24
 877 F.2d at 889 (emphasis in original) (quotation omitted).
 
 
 25
 The GAO's opinion issued in response to Stay's protest indicates that the agency does not view the failure of a successful bidder's surety to appoint process agents before the bids are opened to be a material defect:
 
 
 26
 First, the requirement to appoint federal process agents in certain districts does not bear directly on the authority of the surety to issue a bond, as do the other limitations in the [Treasury] Circular , such as a surety's inability to provide a valid bid bond in excess of its underwriting limitation, or to execute a bond in states where it does not hold a surety license. Further and more importantly, an approved surety's failure to appoint federal process agents does not alter that surety's obligation under an otherwise valid bid bond: such a surety cannot renounce its obligation, and cannot refuse to honor its contractual commitment. Accordingly, in our view, noncompliance with this requirement constitutes a procedural omission that does not render the bond defective and can be corrected after bid opening, as AMPB's surety has done here.
 
 
 27
 Stay, Inc., 69 Comp. Gen. 251, B-237073.2, 90-1 CPD p 225 (2/26/90).
 
 
 28
 We find the GAO's analysis convincing. The requirement that surety companies appoint agents for service of process is undoubtedly designed to protect the government should the need to collect on the guarantee arise. While the government would then surely benefit from the opportunity to serve process on the bonding company in any of three jurisdictions, the GAO could reasonably interpret the law as only requiring appointment of process agents by the successful bidder's surety company after the bids have been opened.
 
 
 29
 In the past, the GAO has held that the contracting officer must verify that a bid bond is valid on its face. Facial validity is shown when the guarantee has been properly executed by the surety's agent, the surety has been approved for and has agreed to be obligated for the full amount of the bond, and the surety appears on the Treasury Circular 570 list of approved sureties. See Siska Constr. Co., Inc., B-218428, 85-1 CPD p 669 (6/11/85), aff'd, B-218428.2, 85-2 CPD p 102 (7/29/85). DOD's Contracting Officer did verify the facial validity of the Merchants Bonding Company guarantee before accepting the AMPB bid. Merchants Bonding Company was listed as an approved surety on the Treasury Circular 570, and the amount of its properly executed guarantee did not exceed its approved underwriting limitations.
 
 
 30
 Any further verification of the guarantee's validity could reasonably be left until after the opening and acceptance of the bid. The failure of Merchants Bonding Company to appoint process agents in California and Virginia until after AMPB's bid was accepted by the DOD did not affect the bonding company's underlying obligation. "In a proceeding against a surety corporation providing a surety bond [for obligations owed to the federal government] ... the corporation may not deny its power to provide a surety bond or to assume liability." 31 U.S.C. Sec. 9307.
 
 
 31
 Stay correctly notes that the GAO has in the past refused to waive other bid defects which, like the failure to appoint process agents, would not have affected the underlying obligation of the bidder or the enforceability of the guarantee. See Midwest Asbestos Removal Service, Inc., B-2333109, 88-2 CPD p 473 (11/10/88) (bid unacceptable when surety company did not appear on Treasury Department's list of approved sureties). Yet we cannot say that the DOD's and GAO's decision to waive strict compliance with the process agent requirement in this case has frustrated Congress' intent or is lacking in reason. The GAO could reasonably conclude that omission of a surety company from the approved list might reflect some underlying financial problem with the surety, whereas the failure to appoint three process agents before acceptance of the bid would not jeopardize the government's ability to enforce the guarantee.
 
 
 32
 Certainly the extent of judicial deference in the awarding of government contracts is not without limit. In Choctaw Mfg. Co. v. United States, 761 F.2d 609 (11th Cir.1985), this court held that a bidder for a Small Business Act set-aside contract which was not in fact a "small business" could not receive the contract, and the DOD had improperly ignored the statutory requirements. "There is no question that a district court may '[e]njoin the performance of a [government] contract if the award was the result of procedures not comporting with the law.' " Choctaw, 761 F.2d at 619 (quotation omitted). The Choctaw court found that the contracting officer had "clearly violated the applicable procurement regulations; ... [T]he interest of the public, and those who bid for the agency's work, in the agency's compliance with the law outweighs the higher price the government will have to pay for the procurements." Id., 761 F.2d at 621.
 
 
 33
 Clearly the requirement for appointment of process agents differs significantly from the issue of small business set-asides however. While in Choctaw there was a clear congressional interest in promoting small businesses which the DOD had improperly ignored, here the DOD and GAO could reasonably conclude that the congressional interest in having agents appointed for service of process in particular states at the time bids are submitted is not nearly so strong. The rule is designed for the government's protection, so that if the government has to collect on the bonds, the legal proceedings can go smoothly. However, unlike a large business, which cannot suddenly become a small business if it is awarded a contract earmarked for small businesses, AMPB's surety company could and did register agents for service of process in Virginia and California once AMPB was awarded the contract in Alexandria. The DOD's conclusion that this technical defect could be remedied after acceptance of the bid was reasonable, and did not represent a clear and prejudicial violation of the applicable statute or regulations.
 
 
 34
 The requirement that surety companies appoint process agents reflects Congress' and the Treasury Department's interest in quickly and easily enforcing bid guarantees. Certainly if in the future the GAO elects to enforce the requirement more rigidly, today's decision should not serve as the basis for an argument that lax compliance is acceptable. We simply find that given the deferential standard of review, the lack of a strong public interest underlying the requirement, and the easily correctable nature of the defect in AMPB's bid, the DOD's and GAO's actions were not arbitrary or capricious in the context of this case, and represent reasonable interpretations of the law.
 
 
 35
 The summary judgment in favor of defendants Cheney, Lefman and AMPB is AFFIRMED.
 
 
 
 *
 Honorable Albert J. Engel, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 Without suggesting our result would be any different, we disagree with the appellant's contention that the Armed Services Procurement Act, 10 U.S.C. Sec. 2301 et seq., governed the letting of this contract for security guard services. In any event, the distinctions between the Armed Services Procurement Act and the Federal Property and Administrative Services Act do not appear to be relevant to the facts of this case