**FAIRPLAIN DEVELOPMENT COMPANY, Plaintiff,**

v.

**R. G. FREEMAN, III, Clarence Sochowski, Robert Ward, and Thomas McEwen, Defendants.**

**No. 80 C 5377.**

United States District Court, N. D. Illinois, E. D.

April 10, 1981.

202

Allen L. Ginsberg, Schwartz, Ginsberg & Meister, Chicago, Ill., for plaintiff.

Gilbert J. Ginsburg, Washington, D. C., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court on the plaintiff's motion for a preliminary injunction. For the reasons set forth below, the motion is denied. The facts of the present case are as follows. The plaintiff Fairplain Development Company ("Fairplain") filed suit against several United States General Services Administration ("GSA") officials pursuant to the Federal Property and Administrative Services Act, 40 U.S.C. § 471 et seq. (1978), the regulations promulgated thereunder, and Executive Order No. 12,072. The complaint alleges that Fairplain leases certain office space to the GSA in Benton Harbor, Michigan which is occupied by the Benton Harbor-St. Joseph Social Security Administration ("SSA") District Office (the "Benton Harbor SSA office"). The office space is located in the Fairplain Plaza Shopping Center ("Fairplain Plaza"). The original lease ran from September 1973 to August 1978. The present lease extension expires in August

1981. On April 24, 1978, GSA published a notice which solicited offers for office space for the Benton Harbor SSA office. According to Fairplain, the notice apparently indicated a preference for leasing office space within the central business district ("CBD") of Benton Harbor. On April 25, 1978, Fairplain requested a copy of the GSA solicitation and discovered that acceptable locations for the office space were restricted to the CBD pursuant to Executive Order 12,-072, 43 Fed.Reg. 36,860 (1978) (the "executive order"). Fairplain's office space is not located within the CBD. With the understanding that the CBD location was a preference and not a restriction, Fairplain submitted an offer to lease its office space to the GSA for the Benton Harbor SSA office on May 26, 1978. On July 7, 1978, the GSA advised Fairplain that the offer could not be considered because the office space is outside the CBD. Fairplain then filed a bid protest with the General Accounting Office ("GAO") protesting the GSA's failure to consider Fairplain's offer. The GAO denied the bid protest in April 1980. Subsequently, the GSA again began soliciting offers for a lease for office space located in the CBD. A lease will be awarded for a period beginning August 31, 1981.

Count I of the complaint alleges that the executive order is invalid because the alleged statutory basis for the order, the Federal Property and Administrative Services Act, 40 U.S.C. § 471 et seq. (1978), does not confer authority upon the President to issue the executive order and because the order is contrary to the congressional directive regarding the location of federal office space. Count II of the complaint alleges that the executive order illegally restricts competition in violation of a federal statute which requires the GSA to acquire leased office space in a manner which maximizes competition. See 40 U.S.C. § 481 (1978). Count III of the complaint alleges that the GSA regulations promulgated under the executive order are illegal. See 45 Fed.Reg. 37,-199 (1980), to be codified at 41 C.F.R. § 101–17.002 (1980).

Subsequent to the filing of the complaint, Fairplain filed a motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) to enjoin the GSA from issuing a solicitation of offers for office space for the Benton Harbor SSA office, awarding a lease for such office space, and otherwise implementing the executive order pending final disposition of this case. In support of its motion, Fairplain contends that the defendants are violating applicable law regarding fair competition and the legal requirements for the procurement of federal office space. Fairplain also contends that it will suffer irreparable harm if the GSA is permitted to relocate the SSA office since such a relocation will eliminate a significant source of business for Fairplain Plaza merchants as well as a source of rental income for Fairplain. Fairplain also contends that it has no adequate remedy at law in that damages against the United States for injuries due to illegalities in the procurement process are limited to bid preparation costs and that such costs would not be available to Fairplain since it has not been allowed to bid for the office space. Fairplain further contends that it is likely to succeed on the merits of the present case. Finally, Fairplain contends that a preliminary injunction will not injure the defendants or any other party. Rather, Fairplain maintains that a preliminary injunction will protect the interests of Fairplain and the public in maintaining the integrity of the federal procurement process and avoiding higher costs for federal office space.

■ The issuance of a preliminary injunction is the court's exercise of an extremely far reaching power and should not be granted except in a case which clearly warrants it. *See Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976). The criteria for a preliminary injunction are well-established: (1) the plaintiff has no adequate remedy at law and will be irreparably harmed if the injunction does not

issue; (2) the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; (3) the plaintiff has at least a reasonable likelihood of success on the merits; and (4) the granting of a preliminary injunction will not disserve the public interest. *Id.* A preliminary injunction cannot be granted unless the plaintiff carries its burden of persuasion as to all of these elements. *Id.* "Irreparable harm" is harm that the district court cannot remedy following a final determination of the merits of the case. *American Hospital Association v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980); *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976). Moreover, mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay do not constitute irreparable harm. *American Hospital Association v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980). In addition, the "required showing of probability of success on the merits varies with the quality and quantum of harm that the moving party will suffer from the denial of an injunction. Where it appears that a lack of showing of irreparable harm exists . . . the party seeking a preliminary injunction has a burden of convincing with a reasonable certainty that it must succeed at the final hearing." *Id.*

■ Applying this standard to the facts of the present case, the court concludes that Fairplain has failed to carry its burden of persuasion as to all of the elements necessary for a preliminary injunction.[1] Fairplain has failed to establish that it has no adequate remedy at law and will be irreparably harmed if the injunction does not issue. If Fairplain prevails on the merits of the present case, Fairplain should be able to recover its costs incurred in the preparation of the bid despite the fact that Fairplain was not permitted to submit the bid to the GSA. *See Morgan Business Associates, Inc. v. United States*, 619 F.2d 892,

---

1. Fairplain, as a disappointed bidder, has standing to obtain judicial review of GSA's decision. *See Airco, Inc. v. Energy Research &*

*Development Administration*, 528 F.2d 1294, 1296 (7th Cir. 1975).

895 n.5 (Ct.Cl.1980).[2] Recovery of these damages is considered to be an adequate remedy at law where the court is asked to enjoin the federal procurement process. *See Cincinnati Electronics Corp. v. Kleppe,* 509 F.2d 1080, 1089 (6th Cir. 1975); *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1302 (D.C.Cir.1971). In addition, the threatened injury to Fairplain does not necessarily outweigh the threatened harm which the injunction may inflict upon the GSA since the federal procurement process will be greatly disrupted if it is subject to injunctive action by the courts. *See id.; John W. Danforth Co. v. Veterans Administration,* 461 F.Supp. 1062, 1072 (W.D.N.Y. 1978); *General Electric Co. v. Kreps,* 456 F.Supp. 468, 474 (D.D.C.1978). A court's reluctance to interfere with the federal procurement process should be especially strong where, as here, the GAO has made a determination upholding the procurement process on its merits. *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1305 (D.C.Cir.1971). Moreover, a preliminary injunction which would enjoin the federal procurement process may disserve the public interest. *See id.* at 1303; *Health Care Service Corp. v. Califano,* 466 F.Supp. 1190, 1194 (N.D.Ill.), *aff'd,* 601 F.2d 934 (7th Cir. 1979); *John W. Danforth Co. v. Veterans Administration,* 461 F.Supp. 1062, 1072 (W.D.N.Y.1978); *Schiavone Construction Co. v. Samowitz,* 451 F.Supp. 29, 31 (S.D.N.Y.), *aff'd,* 578 F.2d 1370 (2d Cir. 1978) (unpublished opinion).[3] Finally, Fairplain has not established that it has a reasonable likelihood of success on the merits.[4] A court's review of a federal procurement determination is limited. *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289,

1301 (D.C.Cir.1971); *Health Care Service Corp. v. Califano,* 466 F.Supp. 1190, 1194 (N.D.Ill.), *aff'd,* 601 F.2d 934 (7th Cir. 1979). A court should not overturn a federal procurement determination unless the aggrieved bidder demonstrates that there was no rational basis for the decision. *Id. See Airco, Inc. v. Energy Research & Development Administration,* 528 F.2d 1294, 1296 (7th Cir. 1975). Such a rational basis is demonstrated where "the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973). Thus, a plaintiff's burden of proof necessary to challenge successfully a federal procurement award is quite heavy. *Health Care Service Corp. v. Califano,* 466 F.Supp. 1190, 1194 (N.D.Ill.), *aff'd,* 601 F.2d 934 (7th Cir. 1979). In the present case, the court concludes that, for the purpose of a preliminary injunction, Fairplain has failed to show that it will succeed on the merits of the case.

Accordingly, the motion for a preliminary injunction is denied.

It is so ordered.

---

**2.** Moreover, Fairplain's bid arguably may be considered to have been rejected as nonresponsive since the bid did not meet the executive order's limitation. *See also Tackett & Schaffner, Inc. v. United States,* 633 F.2d 940, 941 (Ct.Cl.1980).

**3.** In *Steinthal,* the D.C. Circuit stated that injunctive relief in federal procurement cases may be denied in the public interest. In *Serv-Air, Inc. v. Seamans,* 473 F.2d 158, 160 (D.C. Cir.1972), the court stated that the *Steinthal* language should be applied only in extreme

situations, as where relief would delay or interfere with items urgently needed in military operations. The courts in *Health Care, Danforth,* and *Schiavone,* however, applied the *Steinthal* court's language to cases which involved commercial procurement contracts.

**4.** Obviously, Fairplain also has not established that it has a reasonable certainty of success upon the merits which would be required where there is a lack of a showing of irreparable harm. *See American Hospital Ass'n v. Harris,* 625 F.2d 1328, 1331 (7th Cir. 1980).