**JAMES LUTERBACH CONSTRUCTION CO., INC., Plaintiff,**

v.

**Valdas V. ADAMKUS and U.S. Environmental Protection Agency, Defendants.**

**Civ. A. No. 81–C–1121.**

United States District Court, E.D. Wisconsin.

Jan. 10, 1984.

Mark M. Camp, Pfannerstill & Camp, Wauwatosa, Wis., for plaintiff.

Charles H. Bohl, Asst. U.S. Atty., Milwaukee, Wis., for defendants.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

The James Luterbach Construction Co., Inc. seeks a declaratory judgment that the Environmental Protection Agency and its Regional Administrator erred in rejecting Luterbach's bid for the construction of a waste water treatment plant. The case is before me on the defendants' motion for summary judgment[1]. For the reasons set forth below, the motion will be granted and this case will be dismissed.

## FACTS

In March, 1981, the Village of East Troy, Wisconsin, invited construction firms to bid for the right to build a waste water treatment facility in East Troy. The facility was to be funded in part by the EPA pursuant to the Clean Water Act of 1977. The Village took bids from a number of different construction agencies, including the Luterbach Company and the company which ultimately received the bid, Joseph Lorenz, Inc.

The bidders received instructions from the Village which directed them to supply certain information and to comply with policies established by the EPA. One of the policies with which the bidders were directed to comply was the EPA's Minority Business Enterprise (MBE) Policy, an effort on the part of the federal government and the EPA in particular to remedy the imbalance of business between minority and non-minority enterprises in the construction industry. The bidders were advised that the Village had pledged that minority businesses would participate in at least 10% of the work to be accomplished under the contract. The instructions directed the bidders to exercise positive efforts to comply with the 10% MBE goal, to state in the bid whether that goal would be met, and, if the goal could not be met, to document any efforts which had been taken by the bidder to encourage minority participation and reasons for failing to meet the goal. These instructions were adapted by the Village of East Troy from the EPA's Region V Minority Business Enterprise Guidance (see Defendants' Brief in Support, Appendix, Ex. 2). The portion of the adapted instructions upon which this case turns is the Village's warning, which appears in several places amidst the MBE instructions, that *"Failure to submit such information may cause rejection of the bid as non-responsive"* (emphasis in document).

Both Luterbach and Lorenz submitted bids for the East Troy treatment facility.

---

1. I had earlier considered a motion to dismiss in this case. In an order entered January 6, 1982, I dismissed the complaint against the Village of East Troy, in which the treatment plant was to be built, and the Village Board President. After the parties met and conferred in a status conference held on April 2, 1982, I ordered the parties to file a stipulated record and submit briefs on which I could decide the case on its merits. The parties have been unsuccessful in agreeing on a set of stipulated facts. However, I do not believe that the parties' failure to reach a stipulated record renders summary judgment inappropriate.

However, neither bidder was able to certify that he could meet the stated goal of 10% MBE participation. Luterbach submitted a bid in the amount of $3,109,167.00 and proposed a MBE participation of .9%. Luterbach also submitted narrative documentation of its efforts to encourage MBE participation and reasons for its inability to achieve the Village's stated goal (see Plaintiff's Brief in Opposition, Ex. C). The Lorenz bid was the lowest bid submitted, and was lower than the Luterbach bid by nearly $20,000.00. However, in the Lorenz bid, a "0" appeared in the space provided for the bidder to state what percentage of his bid would be carried out by minority enterprises. The bid was signed by the Secretary-Treasurer of the Lorenz firm, who personally inserted the cursive "0" in the slot provided in the instructions. Furthermore, Lorenz provided no documentation indicating whether any efforts had been taken to encourage minority participation, nor why Lorenz failed to meet the stated goal.

In May, 1981, the Village opened and tabulated all the bids and reviewed the bid proposals for completeness and responsiveness. The Village rejected the Lorenz bid. It declared the Lorenz bid non-responsive because it failed to comply with the MBE requirements. Within a week, Lorenz requested that it be allowed to amend its bid to alter its proposed MBE participation from 0% to 10%. The Village held a public hearing in which it considered Lorenz's request, but the request was denied. Lorenz appealed the Village's denial to the EPA's Region V Administrator, in accordance with the protest procedures which are set forth in 40 C.F.R. 35.939. The denial was also appealed by Paul Jordan Associates, Inc., a minority subcontractor which had proposed to participate in Lorenz's contract. In July, 1981, Valdas Adamkus, the Acting Regional Administrator, reversed the Village's decision. Adamkus ruled that the Village, by stating that "Failure to submit such information *may* cause rejection" (emphasis added), had failed to make compliance with the MBE documentation requirements a matter of bid responsiveness. Therefore, he decided, it was improper to reject the Lorenz bid for being non-responsive to the MBE requirements. Following this decision, the Village awarded the contract to Lorenz. Luterbach then proceeded with this civil action.

## DISCUSSION

I do not believe there is any basis for me to override the decision of the EPA Regional Administrator. The simple issue in this case is whether the Regional Administrator had a reasonable basis for the action which he took. I believe that Adamkus had a reasonable basis for his decision; my review may not go any further than that.

Regarding judicial review of administrative procurement decisions, it has long been held that "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir. 1971). This proposition was first stated in *Steinthal,* but has been wholeheartedly adopted by the courts of this Circuit. See: *Rossetti Contracting Co., Inc. v. Brennan,* 508 F.2d 1039, 1043–1044 (7th Cir. 1975); *Airco, Inc. v. Energy Research and Development Administration,* 528 F.2d 1294, 1296 (7th Cir.1975); *Fairplain Development Co. v. Freeman,* 512 F.Supp. 201, 204 (N.D.Ill.1981). This principle places a heavy burden of proof on a bidder challenging a federal procurement award. One court has described the burden as requiring proof that "the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973).

The EPA regulations which outline the required bid procedures pertaining to this case are set forth in Title 40 of the Code of Federal Regulations. 40 C.F.R. 35.938–4(h)(6) provides that:

The grantee shall not reject a bid as non-responsive for failure to list or other-

wise indicate the selection of a subcontractor(s) or equipment, unless the grantee has unambiguously stated in its solicitation documents that such failure to list shall render a bid non-responsive and shall cause rejection of a bid.

Luterbach argues that Lorenz's bid should be rejected for Lorenz's failure to comply with the MBE documentation requirements set forth in the East Troy bid instructions. However, the EPA Regional Administrator, upon his review of the dispute, found that the Village's MBE instructions were not unambiguous. Because the Village had qualified its documentation request with the caution that failure to respond "may" render the bid non-responsive, it did not "unambiguously" state that such bids "shall" be held non-responsive. Therefore, the Regional Administrator decided, under the terms of the regulation, the bid should not have been rejected. Thus it appears the Regional Administrator was acting on reasonable grounds.

Luterbach argues that a decision such as this sets precedent for unregulated mischief in the bidding and procurement process. Luterbach cites *Rossetti, supra,* for the proposition that it would impair the operation of a sealed competitive bidding system for me to allow Lorenz to change a "0%" to a "10%" after all the bids have been accepted. See *Rossetti* at 1045.

I do not believe that this analysis is pertinent. In the first place, the *Rossetti* court recognized, as I do, that the power of the judiciary to review an Administrator's decision is quite limited. In this case, the Regional Administrator's reasoning tracked the terms of a valid regulation. That satisfies the "reasonable basis" test and terminates any further judicial review.

Furthermore, *Rossetti*'s outcome—that bidding should not be reopened to give bidders an opportunity to revise their MBE proposals—does appear to conflict with the outcome which I reach in this case; however, the contrast between *Rossetti*'s facts and the facts here bring the two cases into line: The bid instructions at issue in *Rossetti* stated that "A bidder who fails or refuses to complete or submit such goals *shall* not be deemed a responsive bidder and may not be awarded the contract or subcontract." *Rossetti* at 1044 (emphasis added).

## CONCLUSION

I conclude that the Regional Administrator had a reasonable basis for taking the action which he did. Accordingly, it would be improper to reverse his decision. Therefore, the defendants' motion for summary judgment is GRANTED and this case is DISMISSED.