**ADVANCED SEAL TECHNOLOGY, INC., Plaintiff,**

v.

**William PERRY, Secretary of Defense, Defendant.**

**No. 94 C 4128.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 10, 1995.

James P. Rome, Chicago, IL, for plaintiff.

Brian R. Havey, U.S. Attys. Office, Chicago, IL, for defendant.

## Order

PLUNKETT, District Judge.

This court Adopts and Affirms Magistrate Judge Pallmeyer's Report and Recommendation of October 26, 1994 and Denies Plaintiff's motion for a preliminary Injunction. This case is hereby dismissed, all matters having been resolved. Dismissal is without prejudice to Plaintiff reinstating or refiling within 30 days to claim damages.

## REPORT AND RECOMMENDATION

PALLMEYER, United States Magistrate Judge.

Plaintiff Advanced Seal Technology, Inc. ("AST"), a manufacturer based in Elgin, Illinois, alleges that the Defense Industrial Supply Center ("DISC"), under the control of Defendant Secretary of Defense William Perry, failed to follow proper procurement procedures in considering Plaintiff's bid on a contract to manufacture seal assemblies for the U.S. Navy. Plaintiff seeks a preliminary injunction to force Defendant to terminate its contract with the successful bidder and to resolicit bids or reconsider the previous bids in accordance with relevant regulations and procedures. Defendant opposes Plaintiff's motion, both on the merits and for lack of subject matter jurisdiction.

For the reasons set forth below, this court finds that it has jurisdiction over this matter but recommends that Plaintiff's motion be denied.

## FACTUAL BACKGROUND

The following factual statement is based on the transcript of an evidentiary hearing held before Magistrate Judge Rebecca Pallmeyer on August 2–3, 1994, as well as Plaintiff's Amended Complaint for Preliminary Injunction (hereinafter "Amended Complaint"), Defendant's Answer to Amended Complaint ("Defendant's Answer"), and Defendant's Response to Plaintiff's Motion for Preliminary Injunction ("Defendant's Response").[1]

This case centers on a May 1993 solicitation by the Defense Industrial Supply Center to procure a specific type of spring-loaded mechanical seal assembly (the "seal") for use in certain U.S. Navy water pumps. (Amended Complaint ¶ 4.) The seal is one of more than 900,000 types of military spare parts procured by DISC, an organization within the Department of Defense under the direction of Secretary William Perry. (Amended Complaint ¶¶ 3, 4; Defendant's Response, at 2.) The solicitation in question did not directly describe the specifications for the seal; rather, it identified the seal by its National Supply Number ("NSN")—NSN 5330–01–164–1113 (hereinafter abbreviated "NSN 1113")—and by the corresponding part numbers from two known suppliers of the seal—Aqua–Chem, Inc. and John Crane, Inc. (Amended Complaint ¶ 4; Transcript, at 17, 20–21.) DISC modified the solicitation in June 1993 to identify a third supplier, Calnevar Seal, Inc., which DISC had approved as a source for the seal sometime in 1992.[2] (Amended Complaint ¶ 8; Transcript, at 24, 29.)

Any seal manufacturer may bid on a proposed contract, regardless of whether the manufacturer is identified in the solicitation as a source for the product. (Transcript, at

---

1. Although unverified pleadings are not normally considered part of the evidence, in this case the allegations contained therein are uncontested and help illuminate the facts of the case.

2. The June 25 modification also extended the closing date for the solicitation from June 16 to July 19, 1993. Although DISC had rejected Plaintiff's original proposal because it was tardy, Plaintiff resubmitted its bid before the revised closing date. (Amended Complaint ¶¶ 5–8.) The timeliness of Plaintiff's submission is not an issue in this case.

29, 30.) A company may offer to provide DISC either the product actually specified in the solicitation (i.e., a seal manufactured by Aqua–Chem, John Crane, or Calnevar Seal) or an alternate product having the same form, fit, and function as the seal so specified. (*Id.* at 22.) In the latter case, DISC must follow a two-step process to approve the alternate product. (*Id.* at 85–86.) First, DISC must review technical data, drawings, and other information from the bidder to determine whether the alternate is in fact an acceptable substitute.[3] (*Id.* at 22–23, 85–86.) If DISC determines that the product is not suitable, DISC notifies the company that its bid is rejected. (*Id.* at 23, 25.) If, on the other hand, DISC determines that the drawings show that the product is technically adequate, then DISC proceeds with the second step of the approval process—testing the alternate at an independent laboratory to determine whether it performs as it should. (*Id.* at 85–86.) For example, DISC added Calnevar Seal to the solicitation after the company's technical data package had been reviewed and approved by DISC and its seal had passed the requisite laboratory tests. (*Id.* at 88.) The solicitation did not name Plaintiff as a supplier because at that time DISC was unaware of any AST seal that had been approved as an alternate product for NSN 1113.[4] (*Id.* at 21.)

In response to the solicitation, Plaintiff offered to supply DISC with an alternate seal of its own manufacture, which Plaintiff claims it sold to DISC on two occasions in 1986 and 1990 to satisfy orders for seal assembly NSN 5330–01–161–2563 (hereinafter abbreviated "NSN 2563"). (Amended Complaint ¶¶ 9, 12.) The specifications for NSN 2563 are identical to those for NSN 1113;[5] consequently, Plaintiff claims that approval of AST's seal as an alternate product for NSN 1113 should have 'required nothing more than verification that AST had previously filled two orders for NSN 2563 and that NSN 2563 was identical to NSN 1113. (*Id.*) Plaintiff offered to supply DISC with the seal for a price of $250 per item if 70 seals were ordered, $210 per item if 190 were ordered, and $200 per item if 220 were ordered. (*Id.* ¶ 10.)

In a letter to Plaintiff in August 1993, DISC noted that Plaintiff's two previous seal contracts had probably involved an earlier version of the seal design, which Plaintiff had revised in January 1992. (Amended Complaint ¶ 11; Letter from M.K. Lewis, Contract Specialist, DISC, to Thomas Doepker, President, AST, of August 5, 1993, Ex. 4 to Complaint.) DISC requested that Plaintiff submit test results for its revised seal; alternatively, DISC would submit Plaintiff's technical package to its experts for qualification testing. (Amended Complaint ¶ 11.) Plaintiff responded that the seal designs were identical and provided DISC with technical data to support its proposal. (*Id.* ¶ 13; Transcript, at 25, 48.) DISC admits that it did not evaluate Plaintiff's drawings and technical data prior to awarding the contract, although it should have done so. (Defendant's Response, at 2–3, 10.)

---

**3.** DISC actually relies on technical evaluations from the Naval Sea Systems Command ("NAVSEA") and its contractor Westinghouse Marine Technology Division. DISC is only a purchasing agency; it does not have the authority to purchase an item that has not first been approved by NAVSEA. (Defendant's Response to Plaintiff's Motion for Preliminary Injunction (hereinafter "Defendant's Response"), at 3, n. 2.) The distinction between DISC and NAVSEA is not material to this case, however, so for ease of presentation this Report will refer only to DISC as the agency that approves and purchases the seals in question.

**4.** Plaintiff, a manufacturer of mechanical pump seals, claims it has supplied the federal government with approximately 15,000–20,000 seals of some 25–30 different varieties since late 1985.

(Amended Complaint ¶ 1; Transcript, at 202.) The key question whether it has filled or been approved to fill DISC's orders for seals of the type NSN 1113 will be discussed later in this Report.

**5.** The record shows that NSN 1113 and NSN 2563 differed only in the type of materials used in their construction. (Amended Complaint ¶ 9; Transcript, at 101.) At some unknown point in time, DISC determined that the materials used in NSN 2563 were unsuitable for continued successful operation; consequently, the government upgraded the materials used in a number of its seals, including NSN 2653. (Transcript, at 101–02.) This change made NSN 2563 identical to NSN 1113, so DISC eventually cancelled procurement number NSN 2563. (*Id.*)

On May 26, 1994, DISC awarded the contract to Calnevar Seal.[6] The contract required DISC to purchase 220 of Calnevar's seals for a total price of $52,800, or $240 per seal, a price that is 20% higher than Plaintiff's bid price of $200 per seal.[7] (Amended Complaint ¶ 16.) Plaintiff filed a Motion for Preliminary Injunction in July 1994, asserting that DISC's award of the contract to Calnevar Seal is "unreasonable, arbitrary and unlawful" because Plaintiff's proposal offered the lowest price and complied totally with DISC's solicitation. (*Id.* ¶¶ 17, 18.) Plaintiff also charged that as a result of DISC's failure to evaluate or approve its seal in a timely manner, AST will suffer "irreparable loss of business, income and profit, which may not be remedied in an ordinary action at law." (*Id.* ¶¶ 17, 19.) Calnevar Seal has completed approximately 90% of the order. but has halted production pursuant to a stop-work order issued by DISC. (Transcript, at 26.) DISC asserts that it currently has no more seals of this type in its inventory. (*Id.*)

On August 2–3, 1994, this court held an evidentiary hearing on Plaintiff's motion. Contrary to Plaintiff's contentions, government officials testified that prior award of a contract to a supplier does not necessarily guarantee that the supplier will be awarded a contract for the same item in the future. (*Id.* at 36, 60.) Instead, when a manufacturer claims to have previously supplied a product to DISC, DISC will look closely at what particular product has been supplied; whether it was properly evaluated and approved; what those evaluations and approvals stated; the subsequent quality deficiency history of the item; and whether the part supplied was in fact the part for which DISC had contracted. (*Id.* at 36, 60, 63–64, 164.) In short, DISC's determination that an alternate product is acceptable is based on whether DISC has full confidence that the part will work, not necessarily on whether a particular sup-

plier has provided that item in the past. (*Id.* at 63–64.)

In this case, the parties disagree whether DISC ever purchased or approved for purchase Plaintiff's seal to fill orders for NSN 2563. As stated above, Plaintiff claims that it was awarded two contracts in 1986 and 1990 to supply seals of the type NSN 2563, which is identical to NSN 1113. (*Id.* at 119.) Defendant, however, contends that in the case of the 1990 procurement, DISC's purchase order cited part numbers from Aqua–Chem and John Crane, not AST. (*Id.* at 68–69, 76, 179–181.) Defendant asserts that if Plaintiff sent its own part in response to this order, then Plaintiff improperly substituted its own part for the one that the government had actually ordered. (*Id.* at 76, 212–213.) Neither party provided any documentation regarding the 1986 procurement, nor does DISC have any record that AST ever supplied a seal of its own manufacture in the past. (Transcript, at 77.)

The government's witnesses also explained that if DISC had procured Plaintiff's seal without having properly evaluated or approved it, then that procurement was made in error. (*Id.* at 36.) DISC has no record that it ever approved Plaintiff's seal as an alternate for either NSN 2563 or NSN 1113. (Transcript, at 117, 148; Memorandum from Commander, NAVSEA, to Commander, DISC of 07/27/94, Government Ex. 1.) In preparation for the evidentiary hearing, DISC did inspect Plaintiff's seal design by comparing the dimensions of Plaintiff's seal with the seal that had been produced by the original manufacturer, as well as with the pump into which the seal would be installed. (Transcript, at 88, 98–99.) Two defense witnesses—Ted Krokus and Donald Haun, mechanical engineers with NAVSEA and Westinghouse Marine Technology Division, respectively—testified that they had evaluated Plaintiff's seal and concluded that it was too large to fit into the pump properly. (*Id.* at 90, 95, 112, 125–26, 129–30.) Mr. Haun ex-

---

**6.** Defendant has not explained why it took 12 months from the time of DISC's first solicitation to award the contract. (Transcript, at 27–28.)

**7.** Plaintiff further asserts that because AST is a small disadvantaged business and Calnevar Seal is not, Calnevar's bid should have been adjusted

upward by 10%, to $264 per seal, for evaluation purposes. (Amended Complaint ¶ 16; Plaintiff's Brief, at 29, n. 9, citing "Solicitation Clause M029(b)(1)" on page 21 of the May 1993 solicitation.)

plained that the seal would have to be deformed or damaged in order to fit it inside the pump, which would then completely destroy the seal once the pump was turned on. (*Id.* at 126–27.) Government witnesses testified that in order to produce an acceptable alternate, Plaintiff would have to redesign its seal by resizing its components in order to get the seal to fit into the pump properly. (*Id.* at 127.) On this basis, DISC concluded that Plaintiff's seal was not an acceptable alternate, regardless of any purchases DISC had made of the part in the past. (*Id.* at 25.) The only evidence Plaintiff offered on this matter is an affidavit by its President, Thomas Doepker, who asserts without explanation that AST's seal would in fact fit into the pump. (Doepker Aff. ¶¶ 3, 4.)

## DISCUSSION

Plaintiff seeks to enjoin Defendant from executing its contract with Calnevar Seal and, if the goods are still needed, to order DISC either to resolicit the contract or to award the contract under the previous solicitation in accordance with relevant procurement law and methodology. (Amended Complaint, at 4.) Defendant opposes the motion on its merits and for lack of subject matter jurisdiction. The court finds that although jurisdiction is proper, Plaintiff's motion should be denied.

### A. *Jurisdiction*

The first issue to be resolved is whether this court, as opposed to the Court of Federal Claims (also "Claims Court") has subject matter jurisdiction over this case. As Defendant points out, the Court of Federal Claims has exclusive jurisdiction over cases in which a plaintiff is seeking monetary damages in excess of $10,000 from the federal government and such claim is derived from a federal statute, regulation, or contract. *Rose Acre Farms, Inc. v. Madigan*, 956 F.2d 670, 673 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 34 (1992); *Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272, 1277 (10th Cir.1991). Moreover, the Claims Court has exclusive jurisdiction to grant declaratory relief, including injunctions, on any contract claim brought before the contract is

awarded. 28 U.S.C. § 1491(a)(3); *Maurice Sporting Goods, Inc. v. United States Navy Exchange Service Command,* No. 93 C 4490, 1993 WL 524236, at *4 (N.D.Ill. Dec. 10, 1993) (Hart, J.) (Court of Federal Claims, not district court, has jurisdiction over a pre-award contract claim).

■ Outside of these parameters, the jurisdiction of the Court of Federal Claims does not necessarily preclude action by a federal district court. *Western Securities Co. v. Derwinski,* 937 F.2d 1276, 1279 (7th Cir. 1991) (statutes that allocate federal jurisdiction over contract claims against government between district courts and Claims Court do not constitute exclusive or exhaustive grant of jurisdiction over such claims). In particular, the district courts alone have jurisdiction to grant injunctive relief on claims brought *after* the award has been made. *Maurice Sporting Goods,* No. 93 C 4490, 1993 WL 524236, at *5–6 (district court may enjoin the government from conducting further business with a supplier when government allegedly violated applicable statutes and regulations); *Beck by Beck v. Secretary of the Dep't of Health and Human Servs.,* 924 F.2d 1029, 1036 (Fed.Cir.1991) (equitable power of Claims Court is limited and does not include power to issue injunctions when such power has not been explicitly granted); *JDL Construction, Inc. v. United States,* 14 Cl.Ct. 825 (1988) (Claims Court's equitable power does not extend to suits filed after the government has awarded the contract in question); *La Strada Inn, Inc. v. United States,* 12 Cl.Ct. 110 (1987) (Claims Court has no jurisdiction to entertain bidder's suit for injunctive relief when suit was not commenced until months after contract had been awarded to another party).

■ In this light, it is clear that this court has subject matter jurisdiction over this action. Plaintiff' suit is not a "veiled claim" for money damages, as Defendant urges (Defendant's Response, at 7; Defendant's Supplemental Response, at 1–2) because Plaintiff has not petitioned the court to order DISC to award the contract in its favor, or even to force DISC to award the contract at all. Thus, even if Plaintiff's motion were granted, Plaintiff would not necessarily receive any

damages or their equivalent. *Cf. Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*, 903 F.2d 445, 452 (7th Cir. 1990) (Claims Court, rather than district court, would have jurisdiction over plaintiff's claim challenging the REA's authority to increase wholesale electricity rates only if plaintiff were seeking specific performance on a contract with REA); *Hamilton Stores*, 925 F.2d at 1276–79 (disappointed bidder's petition for injunctive relief to prevent defendant agency from renewing contract with third party is not the equivalent of money damages; thus, district court and not Claims Court has jurisdiction). This conclusion is supported by cases cited by Defendant itself, which hold that district courts may entertain motions for equitable relief filed by disappointed bidders alleging that the government did not follow proper procurement procedures. *See, e.g., Nat'l Maritime Union v. Commander, Military Sealift Command*, 824 F.2d 1228, 1236–38 (D.C.Cir.1987); *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 864, 872–73 (D.C.Cir.1970). These and other cases also make clear that a disappointed bidder has standing to challenge the procurement process. *See, e.g., Nat'l Maritime Union*, 824 F.2d at 1236; *Wabash Valley Power*, 903 F.2d at 451–52.

Furthermore, Plaintiff's claim is clearly a post-award claim, not a pre-award claim: Plaintiff filed its initial complaint two months after DISC awarded the contract to Calnevar Seal. *See Space Age Engineering, Inc. v. United States*, 2 Cl.Ct. 262, 263–64 (1983) (claim filed in November 1982 was clearly post-award when contract had been awarded in September 1982). This fact, together with the fact that Plaintiff is seeking purely equitable relief, means that the district court rather than the Court of Federal Claims has jurisdiction over this matter.

### B. *Preliminary Injunction*

█ Although Plaintiff has brought its claim in the right court, Plaintiff has failed to persuade this court that its motion should be granted. A district court may issue a pre-

liminary injunction only if the moving party can show: (1) that the case has some likelihood of success on its merits; (2) that the movant has no adequate remedy at law; and (3) that the movant would suffer irreparable harm if the injunction is not granted. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 313–14 (7th Cir.1994). If the movant satisfies these three conditions, then the court must: (4) balance the harm to the movant if the injunction were denied against the harm to the defendant if it were granted; and (5) weigh the public's interest in this matter. *Id.* at 314. Plaintiff bears the burden of persuasion on each element. *Heinz v. Frank Lloyd Wright Found.*, 762 F.Supp. 804, 806 (N.D.Ill.1991), citing *Lasco v. Northern*, 733 F.2d 477, 480 (7th Cir.1984). Here, Plaintiff has failed to persuade the court on any of these five elements.

#### 1. *Irreparable harm*

█ Plaintiff cites a number of cases that hold that improper denial of an opportunity to bid on a contract, with the resulting loss of business and profits, constitutes "irreparable harm" that may warrant injunctive relief. *Quality Transport Services, Inc. v. United States*, 12 Cl.Ct. 276, 282 (1987); *Georgia Gazette Publishing Co. v. Dept. of Defense*, 562 F.Supp. 1004, 1010 (S.D.Ga.1983); *Abel Converting, Inc. v. United States*, 679 F.Supp. 1133 (D.D.C.1988); *Collins & Co. v. Clayton*, 476 F.Supp. 407 (N.D.Ga.1979).[8] In the same vein, Plaintiff asserts it will suffer "irreparable loss of business, income and profits" if it is not granted the equitable relief it seeks. (Amended Complaint ¶¶ 18, 19; Plaintiff's Brief, at 11–14.)

Plaintiff admits, however, that this rule "is by no means universal" among the circuits. (Plaintiff's Brief, at 13.) There are a large number of cases that have held that economic loss alone does not constitute irreparable harm. *See, e.g., Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) ("Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are

---

8. Disappointed bidder claims are relatively rare in the Seventh Circuit, so both parties cite cases from other circuits.

not enough."); *Fairplain Development Co. v. R.G. Freeman,* 512 F.Supp. 201, 203 (N.D.Ill. 1981) (same), citing *American Hospital Association v. Harris,* 625 F.2d 1328, 1331 (7th Cir.1980); *Forest County Potawatomi Community v. Doyle,* 803 F.Supp. 1526, 1537 (W.D.Wis.1992) ("lost profits do not constitute irreparable injury, barring exceptional circumstances"), citing *Downstate Stone Co. v. United States,* 651 F.2d 1234, 1241 (7th Cir.1981); *Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n,* 758 F.2d 669, 674 (D.C.Cir.1985); *Housing Study Group v. Kemp,* 736 F.Supp. 321, 330 (D.D.C.1990). Although these cases did not involve disappointed bidders, this rule should apply here all the same. Plaintiff stood to recover no more than $44,000 in gross income from the contract. Plaintiff has offered no evidence at all concerning its projected costs or profits, nor has Plaintiff offered evidence that the loss of this contract would irreparably harm its business, its viability, or its ability to compete for other contracts. *Cf. Wisconsin Gas,* 758 F.2d at 674 (monetary loss constitutes irreparable harm if it threatens the very existence of plaintiff's business); *Cf. Westin v. McDaniel,* 760 F.Supp. 1563, 1569 (M.D.Ga.) (monetary loss constitutes irreparable harm where damages are clearly difficult to assess and measure or where movant would be forced out of business without injunction), *aff'd,* 949 F.2d 1163 (11th Cir.1991). Absent a showing to the contrary, this court is not convinced that an injunction is necessary to avoid irreparable harm to Plaintiff.

### 2. *Inadequate remedy at law*

In some cases, a finding of irreparable harm is related to the absence of an adequate remedy at law. *See, e.g., Sampson,* 415 U.S. at 90, 94 S.Ct. at 953 ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). In Plaintiff's eyes, these elements are "substantially overlapping" (Plaintiff's Brief, at 11–12); accordingly, Plaintiff has not explained what specific remedies at law may exist or why they are inadequate. Plaintiff merely asserts without explanation that the "irrepa-

rable loss" of business and income it would suffer if Defendant's contract with Calnevar Seal is not enjoined "may not be remediated in an ordinary action at law." (Amended Complaint ¶ 19.)

This court is not convinced. In *Fairplain Development,* 512 F.Supp. at 203–204, the court found that the ability of a disappointed bidder to recover costs incurred in preparing its bid did constitute an adequate remedy at law. Similarly, in cases like *Design Pak, Inc. v. Secretary of the Treasury,* 801 F.2d 525, 527–28 (1st Cir.1985) and *Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1019 (2d Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981), courts have denied injunctive relief partly because of the disappointed bidder's failure to demonstrate that an award of damages was inadequate or unavailable. Also, in *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1302–03 (D.C.Cir.1971), a case cited by Plaintiff, the court reversed the lower court's grant of injunctive relief, in part because the court held that equitable relief may be withheld even when the bidder cannot be completely made whole in damages if the public interest so demands.[9] Here, Plaintiff's failure to discuss the adequacy of any remedy at law, together with its unconvincing claim of irreparable harm, is sufficient grounds to deny Plaintiff's motion for injunctive relief.

### 3. *Likelihood of success*

■ Even if this court were to adopt Plaintiff's suggestion that it has suffered irreparable harm that could not be remedied at law, Plaintiff's motion should be denied on other grounds. To challenge an agency's decision to award a contract to a third party, the disappointed bidder must show either that the agency's decision had "no rational basis" or that its procurement process involved a "clear and prejudicial violation" of applicable law. *Elcon Enters., Inc. v. Washington Metro. Area Transit Auth.,* 977 F.2d 1472, 1478 (D.C.Cir.1992); *Stay, Inc. v. Cheney,* 940 F.2d 1457, 1461 (11th Cir.1991), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 973, 117 L.Ed.2d 138 (1992). The burden on the plaintiff is a "heavy" one. *Elcon; Stay.* In

---

**9.** The public interest element of this analysis will be considered later in this Report.

a case cited by Plaintiff, the Court of Appeals for the Federal Circuit explained that a disappointed bidder must show there is a "substantial chance" that it would have been awarded the contract had the procuring agency followed proper procedures, or, in other words, that the plaintiff's bid was "within the zone of active consideration." *CACI, Inc.–Federal v. United States,* 719 F.2d 1567, 1574–75 (Fed.Cir.1983) (cites, quotes omitted); *see also Elcon,* 977 F.2d at 1478–79 (to set aside a procurement decision, a court must find agency's violation to have been *"clear and prejudicial,"* not merely trivial or non-prejudicial (emphasis in original)). This rule is consistent with the great deference that a court will give to an agency's interpretation of its own statutes and regulations, *Stay,* 940 F.2d at 1461, as well as to the agency's technical expertise and its determination which bid is most advantageous to the government. *Lockheed Missiles & Space Co. v. Bentsen,* 4 F.3d 955, 958–59 (Fed.Cir.1993).

Defendant admits that DISC violated its regulations by not evaluating Plaintiff's technical package before making the award. The evidence shows, however, that this violation did not prejudice Plaintiff's proposal for the simple reason that DISC would not have awarded Plaintiff even if it had examined the package.[10] Defendant has offered testimony from two technical experts that Plaintiff's seal is too large to fit into the pump without damaging or destroying the seal. Plaintiff, by contrast, has offered only the opinion of AST's president, Thomas Doepker, that the seal would fit. Doepker provides no substantiation for his conclusion, nor has Plaintiff offered any other evidence to rebut Defendant's testimony. This court is unwilling to accept Plaintiff's assertion that Doepker "is probably in the best position to recognize" that its seal would fit (Plaintiff's Reply Brief, at 7) absent compelling evidence to this effect.

Plaintiff apparently believes it can rest its case on its claim that because DISC allegedly procured AST's seal on two previous occasions, DISC was wrong to deny its approval of the seal on this contract. There are two main flaws in Plaintiff's argument. First, Plaintiff's claim that it has twice filled orders for NSN 2563 (which is identical to the object of the solicitation in question) rests on weak and contradictory evidence. Plaintiff has not offered any evidence to substantiate its allegation that DISC purchased an AST seal in 1986. As for DISC's procurement of an AST seal in 1990, the government's purchase order shows that Plaintiff was to supply a seal manufactured by Aqua–Chem or John Crane, not AST. If Plaintiff supplied an AST seal instead, then Plaintiff improperly substituted its own product for that which had been actually ordered by the government, so any "approval" is meaningless.

The second flaw is that Plaintiff has not provided any evidence showing that DISC ever actually approved AST's seal as an alternate for either NSN 2563 or NSN 1113. As Defendant maintains, if DISC had procured AST's seal in the past without approving it, then that procurement was in error. The court finds no reason to compound that error by forcing DISC to terminate a contract in order to reconsider purchasing a seal that it has shown will not work.

The remainder of Plaintiff's argument on this point is long on assertions but short on evidence. For example, Plaintiff claims it was improperly denied an opportunity to defend its proposal prior to award to the contract, in violation of procurement regulations. (Plaintiff's Brief, at 27–28.) Plaintiff then undermines its own argument by stating that "while the chance [of being awarded the contract] is admittedly speculative, it is not zero and may be significant." (Plaintiff's Brief, at 28.) Speculation of any degree is inadequate to rebut Defendant's more concrete evidence to the contrary; and it fails to satisfy Plain-

---

**10.** This discussion, of course, proceeds from the "clear and prejudicial violation" prong of the test in *Elcon* and *Stay,* rather than the "no rational basis" prong. Plaintiff, which relies on the former standard, asserts that Defendant's arguments are unpersuasive because they are couched in terms of the "no rational basis" stan-

dard. (Plaintiff's Reply, at 3–4.) While Plaintiff is correct that these are two separate standards, Defendant's arguments are relevant not only to show that DISC did have a rational basis not to award the contract to AST but also to show that DISC's errors did not prejudice consideration of Plaintiff's proposal.

tiff's burden to show that it had a "substantial chance" of being awarded the contract. *CACI, Inc.–Federal*, 719 F.2d at 1574–75. Plaintiff also asserts that DISC failed properly to publish its qualification requirements or its *de facto* demand that vendors offer exact copies, rather than alternates, of the parts specified in the solicitation. If these assertions are true, they are relevant to Plaintiff's challenge to DISC's procedures, but not to Plaintiff's contention that those procedures prejudiced Plaintiff's own bid. Finally, Plaintiff's suggestion that the government's concern is limited to the amount of information on Plaintiff's technical drawings and "not ... the physical configuration of the seal itself" (Plaintiff's Reply, at 7) cannot be accepted. The real issue *is* whether the configuration of the seal is such that it would suit the government's purpose, yet Plaintiff has provided no compelling evidence to this effect.

In sum, Defendant may have violated certain procurement regulations by not evaluating Plaintiff's technical package in a timely manner, but Plaintiff has not shown that this omission actually prejudiced consideration of its proposal. Plaintiff has failed to rebut Defendant's evidence that Plaintiff's seal would not fit, nor has Plaintiff offered any other evidence to show that it would have had a substantial chance to be awarded the contract had its package been evaluated. Finally, Plaintiff has not shown that DISC ever approved or properly purchased AST's seals to fill orders for NSN 2563 or NSN 1113. Consequently, there is little likelihood that Plaintiff would succeed on the merits of its claim.

### 4. *Balancing the harm to the parties*

 In considering whether to grant a preliminary injunction, the court views the merits and harm to the parties as inversely related; in other words, the greater the movant's chance of success on the merits, the less it must show that the balance of harm is in its favor. *Storck*, 14 F.3d at 314. On the other hand, the lower the movant's chance of success on the merits, the greater a showing it must make that the balance of harm is in its favor. *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1393 (7th Cir.1992).

The converse holds for the defendant—the greater the harm to the defendant if the injunction is granted, the smaller the showing defendant must make that its own position has merit. *Id.* See also *Original Great American Chocolate Chip Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 276 (7th Cir. 1992); *American Hosp. Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593–94 (7th Cir.1986) (describes abstract formula for weighing parties' harm and merits). This abstract approach is applicable in disappointed bidder cases, for its validity does not depend on the legal basis of the plaintiff's claim. *American Hosp. Supply*, 780 F.2d at 594.

Here, there is little likelihood that Plaintiff will prevail on the merits of its claim, given that Plaintiff has failed to show that its seal would work properly. Consequently, Plaintiff must show that the harm it would suffer if the injunction were denied is far greater than the harm Defendant would suffer if the injunction were granted. Plaintiff asks this court to adopt the position "that an injunction is appropriate if the Plaintiff satisfies the court that it will likely prove that defendant committed material violations of federal procurement law." (Plaintiff's Brief, at 15.) That the violations occurred is not the only issue, however. Plaintiff must show that it would suffer great harm if the injunction is denied, yet Plaintiff has failed to do so. Defendant, on the other hand, points out that it has none of the seals in question in its current inventory, and that it has had to order its contractor to cease production of the seals, causing both the contractor and the government to suffer considerable expense, delay, and other complications. It is clear, then, that any harm to Plaintiff caused by denying the injunction would not outweigh the harm to Defendant by granting it.

### 5. *Weighing the public interest*

In weighing the relative harms to the parties, the court is also directed to consider the interests of the public in granting or denying the injunction. *Storck*, 14 F.3d at 314. Plaintiff asserts that the public would be best served by having procurement officials perform their duties in full accord with applicable law. (Plaintiff's Brief, at 15–16.) While

the court has no disagreement with this general principle, the court also believes that the public would be ill-served by an order requiring DISC to cancel a contract for much-needed parts in order to reconsider a proposal for a seal assembly that will not fit the pump for which it is intended. Consequently, the public interest weighs in favor of denying rather than granting this injunction.

## CONCLUSION

The court finds that it has subject matter jurisdiction over this case because it is a post-award claim for purely equitable relief, as opposed to a pre-award claim or a claim for money damages that should be brought before the Court of Federal Claims. Having established that jurisdiction is proper, however, Plaintiff fails to convince this court that injunctive relief is appropriate. Plaintiff has not shown that any loss of business or income it may suffer constitutes "irreparable harm," or that such harm could not be remedied at least in part by a remedy at law. Furthermore, Plaintiff has little likelihood of success on the merits of its claim because it has failed to rebut Defendant's evidence that AST's seal simply will not fit properly. Finally, the court finds that the harm to Defendant and the public in granting this motion would be much greater than the harm to Plaintiff in denying it. Consequently, this court recommends that Plaintiffs' motion for a preliminary injunction be denied.

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Paul E. Plunkett. *See* FED.R.CIV.P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir.1990).