MARK DUNNING INDUSTRIES,
INC., Plaintiff,

v.

William J. PERRY, Secretary of Defense;
John H. Dalton, Secretary of the Navy;
and B.J. Anderson, Contracting Officer,
Defendants.

Civ. A. No. 95–D–29–S.

United States District Court,
M.D. Alabama,
Southern Division.

Jan. 31, 1995.

Opinion Denying Modification of
Decision Feb. 2, 1995.

James Hill McLemore, Montgomery, AL, for plaintiff.

Karl Dix, Jr., Atlanta, GA, for defendants.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

Before the court is the plaintiff Mark Dunning Industries, Inc.'s motion for a preliminary injunction filed January 20, 1995. Contemporaneously therewith, the plaintiff filed a brief and tendered evidence in support of its motion. The defendants responded in opposition on January 25, 1995, to which the plaintiff replied on January 26, 1995. The court held a hearing on January 25, 1995, at 10 a.m. in Montgomery, Alabama, said transcript of which is part of the record. After careful consideration of the arguments of counsel and the evidence and briefs submitted by the parties, the court issues the following memorandum opinion and order.

## JURISDICTION AND STANDING

28 U.S.C. § 1331 confers subject matter jurisdiction on district courts in disputes arising under the Competition in Contracting

Act, 31 U.S.C. § 3551, *et seq.*, and the regulations promulgated thereunder. *See* 31 U.S.C. § 3556, which recognizes "the right of any interested party[1] to file a protest with the contracting agency or to file an action in a district court of the United States or the United States Claims Court."

■ The plaintiff's legal standing to appeal the General Accounting Office's (hereafter "GAO") decision lies in the Administrative Procedure Act, 5 U.S.C. § 702, *et seq.*. Section 702 provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The plaintiff, as an "unsuccessful bidder" clearly has standing to challenge GAO's procurement decision to award the contract to a third party. *See Choctaw Mfg. Co., Inc. v. United States*, 761 F.2d 609, 615–16 (11th Cir.1985) (holding that the losing bidder has standing to challenge the award of a government contract).[2]

## PARTIES

(1) Plaintiff Mark Dunning Industries, Inc. is a corporation organized and existing under the laws of the State of Alabama with its principal place of business in Dothan, Alabama.

(2) Defendant William J. Perry is the United States Secretary of Defense.

(3) Defendant John H. Dalton is the Secretary of the United States Navy.

(4) Defendant B.J. Anderson is the contracting officer for the United States Navy.

1. An "interested party" is defined in 31 U.S.C. § 3551(2) as "an actual or prospective bidder or offeror whose direct economic interests would be affected by the award of the contract or by failure to award the contract." Here, the plaintiff is an interested party by virtue of submitting its offer and proposal in consideration of being awarded this contract. Furthermore, the plaintiff's economic interests have been directly affected by the defendants' awarding of the contract to a third-party bidder.

2. The court notes that when, as here, an unsuccessful bidder seeks termination of a contract to another bidder and resolicitation of the bids, the court has the power to grant relief. District courts, however, may not order specific perfor-

## FINDING OF FACTS

In this action the plaintiff challenges the United States Navy's termination of its refuse removal contract and the award of the contract to another bidder. The plaintiff requests the court to enjoin the implementation of the Navy's contract "pending the final hearing and determination of this case." Pl.'s Mot. for Preliminary Injunction at ¶ 1. This lawsuit arises out of the following undisputed facts:

(1) For fourteen years, the plaintiff has performed the trash collection and refuse removal work at the Pensacola, Florida Naval Air Station. During these fourteen years, the plaintiff has performed the work satisfactorily, without complaint by the Navy.

(2) The plaintiff's contract will expire on January 31, 1995. The Navy has extended the current contract on various occasions due to this procurement dispute. The plaintiff is willing to continue to perform its work on the same terms upon which it is currently performing. *Id.* at ¶ 8.

(3) Browning Ferris Industries, Inc. is a large waste company. One of its subsidiaries, BFI of Florida, Inc., performs refuse removal work in Florida. *Id.* at ¶ 14.

(4) The Department of the Navy issued Solicitation No. N65114–93–B–2146 for refuse removal and trash collection at the naval facility in Escambia County, Florida. Defendant B.J. Anderson was the contracting officer for this solicitation. *Id.* at ¶ 15.

(5) Solicitation No. N65114–93–B–2146 was an invitation for bids, wherein the bidder

mance when an unsuccessful bidder seeks to enforce its own canceled contract. *See* 28 U.S.C. § 1346 and § 1491 (The Tucker Act), which precludes a district court from hearing claims "founded upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2).

The distinction was explained in *Choctaw:* "A disappointed low bidder ... seeking termination of a government contract with one party and the award of that contract to it, is not deemed to be making a claim for specific performance" of its own canceled contract; thus, the Tucker Act is not implicated. *Id.* at 621, n. 9, *quoted in Mark Dunning Indus., Inc. v. Cheney*, 726 F.Supp. 810 (M.D.Ala.1989), *aff'd*, 934 F.2d 266 (11th Cir. 1991).

providing the lowest price would receive the award of the contract as long as its bid was responsive to the material requirements of the solicitation. *Id.* at ¶ 16.

(6) The solicitation was for a base year plus four one-year options. Various line items were included in the bid. The only line item in dispute in this action is Number 0002 entitled "REFUSE DISPOSAL FEE." *Id.* at ¶ 17.

(7) Line item number 0002 (and other similar line items for each of the four option years) required the contractors to quote a price for the "REFUSE DISPOSAL FEE" in accordance with paragraphs C.22 and C.23 of the solicitation. In the solicitation, the Navy estimated that its volume of refuse would total 14,400 tons annually. The solicitation required the bidder to include a unit price and total amount for that particular line item. *Id.* at ¶ 18.

(8) Paragraph C.22 provides in part: "Contractors must base their bid for the disposal fee that will be in effect on 1 October 1994. Future changes in landfill disposal fees shall be reported to the Contracting Officer and adjustments to the disposal fee unit prices will be made in accordance with the Economic Price Adjustment Clause." *Id.* at ¶ 19. Paragraph C.22 further provides as follows:

> The disposal fee on this contract will be invoiced separately as indicated in paragraph G.4. The disposal fee will be paid monthly based on the total cumulative tonnage delivered to the landfill each month as shown on the landfill's certified weight tickets multiplied by the unit cost for the Refuse Disposal Fee on Line Item 0002 in the Bid Schedule. The disposal fee payment shall not exceed the actual fee charge shown on the landfill receipts or other evidence of payments to the landfill.

*Id.* at ¶ 20.

(9) The Economic Price Adjustment clause referred to in paragraph C.22 is printed in

paragraph I.7 and states, in pertinent part, as follows:

> (a) The Contractor shall notify the contracting officer, at any time during contract performance, the disposal fee unit prices shown in the schedule in section B either increase or decrease as a result of new landfill/disposal fees set by the *Escambia County Commissioners.*
>
> . . . .
>
> (e) Any price adjustment under this clause is subject to the following limitations:
>
> (1) Any adjustment shall be limited to the effect on unit prices as a result of new landfill/disposal fees set by the *Escambia County Commissioners* . . . .[3]

Def.s' Ex. 1 introduced at the January 25, 1995, hearing (emphasis supplied).

(10) The sealed bids were opened on August 30, 1994. BFI of Florida[4], the subsidiary of BFI, was the apparent low bidder, while the plaintiff submitted the second lowest bid. *Id.* at ¶ 28.

(11) BFI's bid totalled $1,060,713.00, while the plaintiff's bid amounted to $1,073,129.63 for the base period (first year). Hence, the cost differential between the bids was $12,416.63. *Id.* at ¶ 29.

(12) BFI based its bid upon the use of a landfill located in Alabama, the landfill of which is owned by an affiliated company of BFI. The plaintiff submitted its bid based upon the rates in effect at the Escambia County, Florida landfill.

(13) By letter dated September 1, 1994, the plaintiff filed a protest with the GAO requesting the Comptroller General[5] to recommend "to the United States Department of the Navy that [the plaintiff's] bid be accepted and awarded the contract as the lower responsive, responsible bidder." Pl.'s Compl., Ex. 6 at 2.

---

**3.** Arguably, these references to the landfill/disposal rate set by the Escambia County Commissioners infer that the bids were to be based on a contract with the Escambia County, Florida landfill.

**4.** Hereafter referred to as "BFI."

**5.** Under the Competition in Contract Act, the Comptroller General has authority to entertain objections to agency procurement decisions and require the agency to stay the award or performance of the contract pending his or her decision. 31 U.S.C. § 3551–3556.

(14) As a result of this protest, the Navy delayed awarding the contract pending the GAO's decision and extended Dunning's contract to January 31, 1995.

(15) As grounds for its protest, the plaintiff argued that BFI's bid of $28 per ton on line number 0002 was nonresponsive and should have been rejected for three reasons: Solicitation paragraph number C.22 required bidders to base their bids on the disposal fee in effect at the Escambia County, Florida landfill on October 1, 1994, which was $30 per ton; BIF's bid was "mathematically and materially unbalanced"; and BFI's bid of $28 per ton was clearly a mistake. Pl.'s Compl., Ex. 6 (Pl.'s Protest) attached thereto.

(16) The Comptroller General issued its decision denying the protest on December 7, 1994.

## DISCUSSION

*Standard for Obtaining a Preliminary Injunction*

While Rule 65 of the *Federal Rule of Civil Procedure* does not provide specific requirements for the granting of a preliminary injunction, courts have established that the moving party generally must satisfy the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the preliminary injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm that the injunction may do to the opposing party; and (4) that the preliminary relief will serve the public interest. *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 159 (11th Cir.1990). "The necessary 'level' or 'degree' of possibility will vary according to the court's assessment of the other factors." *Washington Metropolitan Area Transit Com'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977).

**A.  Likelihood of success on the merits**

■■■ On a motion for preliminary injunction, the plaintiff is not required to prove its case by a preponderance of evidence. Rather the plaintiff merely must offer proof of a likelihood of success on the merits. In determining the likelihood of success on the merits, the court must defer to the GAO's determination [6] that BFI was in fact the low bidder, that BFI's bid complied with the terms of the solicitation, and that, however confusing the solicitation, the terms thereof did not require bidders to base their bids on the Escambia County, Florida disposal facility. The Administrative Procedure Act, 5 U.S.C.A. §§ 702–706, restricts the scope of the court's review of GAO decisions. To prevail under § 706(2)(A), the plaintiff must show either (1) that the decision to award the contract to BFI lacked any "rational basis," or (2) "that the decision involved a clear and prejudicial violation of applicable statutes or regulations." *Choctaw Mfg. Co., Inc. v. United States,* 761 F.2d 609, 616 (11th Cir. 1985); *see e.g. Mark Dunning Indus., Inc. v. Cheney,* 726 F.Supp. 810, 814 (M.D.Ala.1989) (Thompson, J.), *aff'd,* 934 F.2d 266 (11th Cir.1991).

In determining whether the GAO's decision provided a rational basis, the court "should be concerned with whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion" in awarding a procurement contract. *Latecoere Int'l, Inc. v. United States Department of the Navy,* 19 F.3d 1342, 1356 (11th Cir.1994) (*citing MCI Telecommunications Corp. v. FCC,* 675 F.2d 408 (D.C.Cir.1982) and *Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981)). The Eleventh Circuit further opined that "[p]roof that the award lacked a reasonable basis generally establishes arbitrary and capricious action." *Id.* (*citing Keco Indus., Inc. v. United States,* 492 F.2d 1200, 203 Ct.Cl. 566 (1974)). Evidence showing "subjective bad faith" on the part of the procuring agency, "depriving a bidder of fair and honest consideration of its proposal, generally constitutes arbitrary and capricious action." *Id.* (*citing Keco,* 492 F.2d at 1203).

---

**6.** Where, as here, the Navy follows the recommendation of the GAO without further explanation, the court evaluates the Navy's decision by looking to the GAO's rationale. *See Mark Dun-*

*ning Indus., Inc. v. Cheney,* 726 F.Supp. 810, 814 (M.D.Ala.1989) (Thompson, J.), *aff'd,* 934 F.2d 266 (11th Cir.1991).

Thus, while the court should avoid unnecessary intrusion into matters involving military procurement, " 'uncritical' deference to the GAO's decision is not proper." *Id.* (*citing Shoals American Indus., Inc. v. United States,* 877 F.2d 883, 889 (11th Cir.1989)). "[T]here certainly may be instances where the District Court will find procurement illegality that the GAO failed to recognize, or at any event failed to correct." *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301–03 (D.C.Cir.1971), *quoted in Latecoere,* 19 F.3d at 1356.

### B. Analysis

■ With these precepts in mind, the court turns to the contentions of the plaintiff. The plaintiff asserts that the GAO, in denying its protest, never reached the merits of many issues in its protest. Pl.'s Mot. for Preliminary Injunction at 1–2. For example, the GAO did not address whether the solicitation promoted "full and open competition [7]" when all but one bidder [8] interpreted the terms of the solicitation as requiring bidders to use the rate of the Escambia County, Florida landfill or whether the terms of the solicitation rendered the solicitation ambiguous and unclear. The GAO, in determining that BFI's bid complied with the terms of the solicitation, responded in part as follows:

> The IFB [Invitation For Bids] did not require bidders to bid a predesignated price for CLIN 0002. Nor did the IFB contain any specific requirement for the successful bidder to have a "franchise agreement" or other business license issued by the state of Florida or Escambia County. In addition, the IFB [invitation for bid] did not require bidders to designate in their bids a bidders to submit fixed unit and extended prices for providing all labor, supervision, tools, material, equip-

ment, and transportation necessary to dispose of the waste collected from the installations covered by the IFB, which, in their business judgment, would make their bids competitive. Thus, Mark Dunning's contention notwithstanding, nothing in the IFB required bidders to submit a unit price of $30/ton for CLIN 0002. The language in section C.22 of the IFB required only that bidders provide a baseline price for CLIN 0002 as of a date certain which the agency could use in considering any future requests by the successful bidder for upward adjustments to the price of CLIN 0002 under the contract's economic price adjustment clause. Indeed, the fact that the IFB provided a blank space for bidders to insert a price for CLIN 0002 belies the protester's assertion that bidders were required to submit a preestablished price for that item. We have examined BFI's bid and find nothing on its face that takes exception to any of the IFB requirements. Since BFI has promised to perform in accordance with the terms of the IFB without exception, BFI's bid is responsive.

Pl.'s Compl., Ex. 9 attached thereto (brackets supplied).

Hence, the GAO's decision indicates that neither the GAO nor the Navy views the failure of BFI to base its bid on the Escambia County, Florida landfill as contrary to the terms of the solicitation. After careful consideration, the court finds that the GAO's determination apparently overlooked several critical issues, and in so finding, the court is unable to properly determine the plaintiff's likelihood of success on the merits.

Therefore, in deferring to the GAO's expertise, the court will stay the proceedings and remand this action to the GAO for consideration of additional factual and legal is-

---

**7.** The Competition in Contracting Act (hereafter "CICA"), 10 U.S.C. § 2301, *et seq.,* mandates that the head of a United States agency in procuring contracts shall solicit bids in "a manner designed to achieve full and open competition" and shall award the contract to the bidder "whose bid conforms to the solicitation and is most advantageous to the United States." 10 U.S.C. § 2305. In setting procedures for carrying out solicitation, the CICA requires each military agency to "specify the agency's needs and

solicit bids or proposals in a manner designed to achieve full and open competition for the procurement" and "to develop specifications in such manner as is necessary to obtain full and open competition with due regard to the nature of the property or services to be acquired." 10 U.S.C. § 2305(a)(1)(A).

**8.** The defendants assert that two bids differed from the Escambia County landfill rate.

sues, discussed *infra*. The court further finds that a brief delay in ruling on the plaintiff's motion will cause minimal, if any, harm to the Navy. The plaintiff has represented that it is willing and able to continue its services until such time that the GAO reevaluates its prior decision in light of the court's opinion. Therefore, the court directs the GAO to reconsider its decision in light of the following issues: [9]

(1) The GAO disregarded the fact that its own legal counsel was apparently concerned with the clause in the bid, which referenced the Escambia County, Florida landfill. Without formally questioning the propriety of the apparent ex parte communication and the conversation which inferentially ensued therefrom, the court with emphasis calls to the GAO's attention the following quotation of a telefax, bearing the letterhead of the Office of Counsel Naval Facilities Engineering Command, "From: Diane Hayden," "To: Jim Sparks," "Subj: Dunning (our favorite case)," dated November 11, 1994: "The GAO atty called—He has concerns over the EPA clause—see attached. Why did we reference Escambia County landfill[?] Will talk to you on Mon. re: this issue. Very Important!" *See* Ct.'s Ex. 1 attached hereto (brackets supplied). Significantly, the GAO attorney's "very important" concern appears to go to the core issue of whether the bid solicitation was clear, adequate and complete. *See* 48 C.F.R. § 14.101(a).

(2) Furthermore, in determining that the bid solicitation did not require bidders to base their unit rate on the Escambia County, Florida landfill, the GAO failed to address the plaintiff's assertion that such an interpretation is in direct contravention with the plaintiff's prior course of dealings with the Navy. Specifically, the plaintiff has made representations that in formulating prior bids for the refuse collection and trash removal contract, the Navy required the plaintiff, and all other bidders, to use the rate of the Escambia County, Florida landfill, and in fact every bidder used said rate.

(3) The GAO also should consider the prejudice to the plaintiff. The plaintiff has rep-

resented and offered proof that had it known that it could bid outside Escambia County, Florida, it would have been the low bidder. *See* Ct.'s Ex. 2 (Pl.'s calculation of bid reduction) attached hereto. If the GAO determines that the plaintiff was prejudiced, it should further determine whether the plaintiff is entitled to any relief.

(4) The GAO also should address the obvious discrepancies between the bid rates and the plaintiff's assertion that all bidders except one (or two) interpreted the solicitation as requiring that the Escambia County, Florida landfill rate must be inserted in the blank contained in line item number 0002. The GAO should further determine whether the bidders were competing on an equal basis, and if not, whether the solicitation prevented a "full and open competition."

(5) The GAO should further confront the issue of whether the terms referencing the Escambia County, Florida landfill render the solicitation ambiguous, and if so, whether the GAO recommends that a resolicitation of the bids is warranted. *See* 48 C.F.R. § 14.404–1(c)(1), which provides that "[i]nvitations may be canceled and all paragraph (a)(1) above, the agency head determines in writing that— (1) Inadequate or *ambiguous* specifications were cited in the invitation." [Emphasis supplied.] The GAO also should consider whether 48 C.F.R. § 14.404–1(b) is applicable (delineating when an invitation must be canceled).

(5) In light of the plaintiff's assertions, the GAO also should address whether the invitation "clearly, accurately, and completely" described the alleged requirement that the bidders could base the tonnage rate on any landfill. *See* 48 C.F.R. § 14.101(a).

## CONCLUSION

Accordingly, it is CONSIDERED and ORDERED as follows:

(1) that the decision of the GAO be and the same is hereby REMANDED for further expeditious consideration and reevaluation

9. The court observes that the plaintiff has submitted sufficient evidence for the court to conclude that the following factual issues are not frivolous.

thereof in accordance with this memorandum opinion and order.

(2) that the GAO is DIRECTED to promptly certify to this court its finding of facts, conclusions of law and decision, addressing each of the issues suggested herein.

(3) that the court retains JURISDICTION in this action and reserves ruling on the plaintiff's motion for preliminary injunction pending the GAO's revised finding of facts, conclusions of law and decision, and the court's review of said finding of facts, conclusions of law and decision.

(4) that pending the above, the execution of the contract on Solicitation No. N65114–93–B–2146 be and the same is hereby STAYED until the court rules on the plaintiff's motion for preliminary injunction.

(5) that pending the above, the United States Navy GRANT a contract extension to the plaintiff, as previously done.

(6) that the Clerk of the Court CERTIFY a copy of this memorandum opinion and order to the Comptroller General of the United States, Washington, D.C. 20543, and serve a copy hereof on all counsel of record by fax and by certified mail.

## MEMORANDUM OPINION AND ORDER ON MOTION TO MODIFY

Before the Court is the United States Navy's "Emergency" Motion to Modify Order of January 31, 1995. The Plaintiff, Mark Dunning Industries, Inc., filed a reply on February 1, 1995. After careful consideration of the arguments of counsel, the Court finds that the United States Navy's motion is due to be denied.

### FINDING OF FACTS

Complete findings of fact are contained in *Dunning v. Perry*, No. 95–D–29–S (M.D.Ala. Jan. 31, 1995). The Court incorporates by reference those facts into the memorandum opinion and order. The relief ordered therein includes a Court Order requiring the United States Navy (hereafter "Navy") to grant a contract extension to the Plaintiff as previously done, while the Plaintiff's protest is pending before the General Accounting Officer (hereafter "GAO").

The Navy requests that the Court modify its order and permit it to solicit bids from both the Plaintiff and Browning Ferris Industries, Inc. (hereafter "BFI"), the contractor to whom the Navy has awarded the services contract at dispute in this action. The gravamen of the Navy's complaint is that the court-ordered extension in effect directs the Navy to issue a "sole-source" procurement in violation 10 U.S.C. § 2304.[1] The Navy further asserts that because both contractors, BFI and the Plaintiff, are capable of immediately beginning work, the Navy must solicit bids from both.

The Navy further asserts that failure to procure these services will seriously injure the health and well being of Navy personnel at the Pensacola Naval Air Station. The Plaintiff, on the other hand, has represented that it is in fact continuing its services to ensure that no harm befalls the Navy personnel even though the Navy, as of date, has not extended the Plaintiff's contract as ordered by this Court.

### ANALYSIS

The Court's Order issued January 31, 1995, is not a final order, but rather seeks to maintain the present position of the parties pending the GAO's reevaluation of its decision in accordance with the issues set forth in the Court's Order. In such circumstances, a court has broad discretionary powers to fashion such equitable relief. *Lemon v. Kurtz-*

---

1. 10 U.S.C. § 2304 provides in pertinent part as follows:

    (c) The head of an agency may use procedures other than competitive procedures only when—

    (1) the property or services needed by the agency are available from only one responsible source or only from a limited number of responsible sources and no other type of property or services will satisfy the needs of the agency.

    (2) the agency's need for the property or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.

*man*, 411 U.S. 192, 200–01, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973).

The Court has fashioned its remedy to leave all the parties in the same position that they would have enjoyed had the GAO, the first time around, adequately addressed the issues in the Plaintiff's protest. When the protest was initially considered by the GAO, the Navy extended the Plaintiff's contract so that any recommendation by the GAO could be implemented without causing the parties to alter their positions, remaining uncertain of the forthcoming decision of the GAO.[2] If the Plaintiff is forced to cease its performance of the refuse disposal and dismiss its work force, any decision by the GAO recommending rebidding of this work will be moot since the Plaintiff will no longer be able to competitively compete due to its changed position.

Clearly, pursuant to 31 U.S.C. § 3553, *see supra* footnote 1, the Plaintiff was entitled to a stay of the contract performance, while this protest was pending before the GAO. BFI, thus, could not perform this contract prior to a final decision "but for" the GAO's failure to address all the issues in the Plaintiff's protest. BFI is only able to perform this work because of the United States Navy's premature[3] award of this contract after this suit was filed but prior to the Court's January 31, 1995, Order. Had the GAO fully considered the Plaintiff's protest at the outset, there is no question that the Navy would have extended the Plaintiff's contract until the GAO issued a final decision. The Court's Order simply seeks to maintain the *status quo* that would have continued absent the short break in this process for its initial judicial review. The Court further finds that any harm falling on the Navy is outweighed by the interest of ensuring that all bidders are afforded a fair and impartial review of protests.

Moreover, this remedy is not unusual or unique. In previous cases, federal courts have ordered the extension of a contract under similar circumstances. *Dairy Maid Dairy, Inc. v. United States*, 837 F.Supp. 1370, 1382 (E.D.Va.1993); *Ace–Federal Reporters, Inc. v. F.E.R.C.*, 732 F.Supp. 10, 13 (D.D.C.1990); *Samson Tug & Barge Co., Inc. v. United States*, 695 F.Supp. 25, 29 (D.D.C. 1988); *Universal Shipping Co., Inc. v. United States*, 652 F.Supp. 668, 676 (D.D.C.1987).

In each of these cases, the court enforced the stay provisions of the Competition in Contracting Act. Each court ordered an extension of the incumbent's contract to ensure that the GAO's decision could be effectively implemented and not rendered moot. All of the aforementioned district courts chose extension of the incumbent contract rather than solicitation of a "bridge contract" to preserve the *status quo* even though the protested contractor was available as a source.

Furthermore, these decisions recognize the unique position enjoyed by an incumbent contractor when a contract is bid and the harm that the incumbent will suffer if its contract is allowed to expire while a legitimate protest is pending:

> Hence, in order to award relief that will maintain the *status quo* and place the parties in approximately the positions they occupied before the decisions that ... [may well] ... be found unlawful, the Samson contract should be extended—at least until the contracting officer can [if required] establish a new, fair means of awarding the Adak contract in accordance with all applicable rules and regulations, including the Small Business Act—as it would have been had the government not acted in a manner ... [which may well] ... be found to be unlawful. There is sound precedent for such relief.

*Samson Tug*, 695 F.Supp. at 30 (brackets supplied).[4]

**2.** Under the Competition in Contract Act, the Comptroller General has authority to entertain objections to agency procurement decisions and require the agency to stay the award or performance of the contract pending his or her decision. 31 U.S.C. §§ 3551–3556.

**3.** The court finds that the award of the contract to BFI was premature in that the GAO failed to render a complete and adequate decision.

**4.** In *Samson Tug*, "the contracting officer determined that extending the Samson contract [the incumbent contractor] beyond June 30 would have constituted a new procurement on less than full and open competition when there was at

The Court in its January 31, 1995, Order fashioned a necessary remedy for the effectuation of a full and fair resolution of this dispute. The Court's actions, as explained *supra*, are fully consistent with and further the policies and aims of the Competition in Contracting Act, i.e., to provide bidders with an effective protest forum. 31 U.S.C. § 3554(a)(1). While the Competition in Contracting Act requires the Comptroller General to decide a protest within ninety days of its submission, *see* 31 U.S.C. § 3554(a)(1), the stay of contract performance may continue indefinitely while the protest is pending. *See* 31 U.S.C. § 3553(d)(1).

Moreover, the Court finds the Navy's reliance on the Comptroller General's decision in *Laidlaw Environmental Serv., Inc.*, B–250377.2, 92–2 at ¶ 366 (Federal Publications Nov. 23, 1992), without merit. That decision is distinguishable from the case *sub judice* for several reasons. First and foremost *Laidlaw* did not involve maintaining the *status quo* while the parties awaited a decision on a protest by the GAO or a district court. Second, the Navy was not acting under an order of a United States district court. Third, the contract at issue involved the performance of an interim services contract. Here, the court has ordered the stay of BFI's contract and the extension of the Plaintiff's contract. It would be incongruous to conclude that BFI was a potential "source" of competition, as the Navy claims, when it is currently stayed by Order of this Court from performing these services. Such a conclusion violates the spirit, if not the letter, of the Court's Order staying BFI's contract.

Apparently, the parties dispute whether BFI is even able to start performance of this work.[5] Since the Court concludes that an Order directing the United States Navy to extend the Plaintiff's contract is a valid exercise of the Court's equitable powers, it need not address this issue.

hand a valid competitive offer...." *Id.* at 27 (brackets supplied). In that case as here, the court has exercised its equitable powers to maintain the *status quo* by ordering extension of the protester's contract. To do otherwise would frustrate the relief fashioned by the court.

### CONCLUSION

The Court finds that it has properly exercised its equitable powers in ordering the United States Navy to grant a contract extension to the Plaintiff as it has done in the past. Moreover, soliciting a bid from BFI for the services would undermine and violate the equitable relief that the Court has ordered.

Accordingly, it is CONSIDERED and ORDERED that the United States Navy's "Emergency" Motion to Modify Order of January 31, 1995, be and the same is hereby DENIED.

**5.** Indeed, although the Navy vigorously argues its unconstitutionality, an Escambia County, Florida "ordinance," which is presently in full force and effect, requires anyone removing trash and refuse in Escambia County to obtain a franchise from the County and to use the landfill in Escambia County.